## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SOHA ELSAYED,

       Plaintiff,

v.

JOHN DOE, an individual whose true
identity is unknown; and TEA
DATING ADVICE, INC., a
corporation,

       Defendants.

Case No.

Hon.
Magistrate Judge

Removed from Wayne County Circuit
Court
Case No: 25-011087-NO
Hon. Edward Ewell, Jr.

---

### NOTICE OF REMOVAL

**NOTICE IS HEREBY GIVEN**, that Defendant Tea Dating Advice, Inc.
("Tea" or "Defendant"), by its counsel, hereby removes the claims pending in the
action captioned *Soha Elsayed v. Tea Dating Advice, Inc., et al.*, Case No. 25-
011087-NO before the Circuit Court of Wayne County, Michigan (the "State Court
Action") to the United States District Court for the Eastern District of Michigan,
Southern Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, based on
diversity of citizenship.  In support of this removal, Tea states as follows:

### I.      BACKGROUND AND TIMELINESS OF REMOVAL

    1.     On July 17, 2025, Plaintiff Soha Elsayed ("Plaintiff") filed a complaint
in the Circuit Court of Wayne County, Michigan, against John Doe.  The complaint

did not name Tea as a defendant.

2.      On September 18, 2025, Plaintiff filed her first amended complaint (the "First Amended Complaint"), adding Tea as a defendant.

3.      Plaintiff's claims concern the publication of an anonymous user's statement about Plaintiff on Tea's mobile application platform (the "Tea App"). (*See generally*, **State Court Documents**, Am. Compl.)   Plaintiff alleges that an anonymous Tea App user falsely claimed that she was responsible for a post accusing four women of "sleep[ing] around with married men for money."  (State Court Documents, Am. Compl. ¶¶ 12-13.)   Plaintiff further alleges that Tea obstructed discovery and shielded the "wrongdoers."  (*See id.* ¶ 9.)

4.      Plaintiff asserted claims for: (1) Defamation (against John Doe); (2) Aiding and Abetting Defamation (against Tea); (3) Civil Conspiracy (against Tea and John Doe); (4) Tortious Interference with Prospective Civil Action (against Tea); (5) Negligence (against Tea); (6) "Spoliation / Concealment of Evidence" (against Tea); (7) Declaratory and Injunctive Relief (against Tea); and (8) Attorneys' Fees, Costs, and Punitive Damages (against Tea).  (*See id.*, ¶¶ 31-65.)

5.      On September 30, 2025, Tea's registered agent received the First Amended Complaint by mail.  (*See* State Court Documents, Service Sheet.)

6.      In accordance with 28 U.S.C. § 1446(b), this notice of removal (the "Notice") is being filed within thirty (30) days of the date when Tea's agent received

a copy of the First Amended Complaint, which is the initial pleading setting forth the claim for relief upon which this action is based, against Tea.

7.     Pursuant to 28 U.S.C. § 1446(a), any and all process, pleadings, and orders now on file in the State Court Action or served on Tea are attached to this Notice as State Court Documents.

## II.    VENUE

8.     This Court is in the judicial district and division embracing the place where the State Court Action was brought and is pending.  Specifically, the United States District Court for the Eastern District of Michigan embraces the Circuit Court for the County of Wayne.  Thus, this Court is the district court to which this case is properly removed.  *See* 28 U.S.C. §§ 1441(a) and 1446(a).

## III.   NO ADMISSION

9.     Tea denies any liability in this case. In alleging the amount in controversy and other matters in this Notice, Tea does not concede any liability, damages, or any other claims or defenses.  Tea is only stating what the stakes of litigation could be under Plaintiff's allegations as set forth in her First Amended Complaint.

10.    In filing this Notice, Tea does not waive, and specifically reserves, any and all objections, including but not limited to objections as to service and personal jurisdiction.

3

## IV.   <u>GROUNDS FOR REMOVAL</u>

11.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because (1) there is complete diversity between the parties; (2) the amount in controversy exceeds $75,000.00; and (3) Tea is not a citizen of Michigan for purposes of diversity jurisdiction.

12.    In addition, removal of this case is proper under 28 U.S.C. § 1441(a), which provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

### A.    Complete Diversity Exists Between the Parties

13.    Plaintiff alleges that she is a citizen and resident of the State of Michigan.  (*See* State Court Documents, Am. Compl. ¶ 1.)

14.    Tea is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Delaware (*see* **Exhibit A**, Tea's Certificate of Incorporation), with its principal place of business in San Francisco, California.  (*See id*.)  Therefore, Tea is a citizen of Delaware and California for purposes of determining diversity of citizenship.  *See* 28 U.S.C. § 1332(c)(1); *see also Good v. Howmedica Osteonics, Corp.*, No. 16-1173, 2017 WL 11716360, at *2

(6th Cir. Dec. 4, 2017) (corporation a citizen of its state of incorporation and where it has a principal place of business).

15.    The citizenship of the Doe Defendant should be ignored because "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. §1441(b)(1); *see also Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948 (6th Cir. 1994) ("It is clear that 'Jane Doe' is a fictitious name . . . Section 1441(a) compels that this 'named' defendant be disregarded for purposes of diversity jurisdiction.").

16.    Therefore, there is diversity of citizenship between Plaintiff, a citizen of Michigan, and Tea, a citizen of Delaware and California.

**B.    THE AMOUNT IN CONTROVERSY REQUIREMENT IS MET**

17.    The amount-in-controversy in this action exceeds $75,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332.

18.    As the Supreme Court has made clear, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  Indeed, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 87.

19.    As the Supreme Court recognized, "[d]efendants do not need to prove

5

to a legal certainty that the amount in controversy requirement has been met." *Id.* at 88-89 (*citing* H.R.Rep. No. 112–10, p. 16 (2011)).  Similarly, the Sixth Circuit has recognized that "this is not a 'daunting burden' that requires the defendants to 'research, state, and prove the plaintiff's claim for damages.'" *Halsey v. AGCO Corp.*, 755 F. App'x 524, 527 (6th Cir. 2018) (quoting *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001)).

20.    Plaintiff claims that she suffered "reputational injury, humiliation, emotional distress, and special damages for economic loss and lost business opportunities" (State Court Documents, Am. Compl. ¶ 12 & Prayer for Relief, subsection (A).)  Plaintiff also alleges that she continues to suffer "continuing reputational injury, lost business opportunities, [and] emotional distress," (*see* State Court Documents, Am. Compl. ¶ 27), which have been "magnif[ied]" by members of the press reaching out to Plaintiff regarding the dispute (*see id.* ¶ 28).

21.    Plaintiff seeks open ended compensatory, treble, and punitive damages, "in an amount sufficient to punish willful misconduct and to deter similar wrongdoing by other online platforms." (*See* State Court Documents, Am. Compl., Prayer for Relief, subsection (A-B).)

22.    By filing her Complaint in Michigan Circuit Court, Plaintiff has alleged that the amount in controversy exceeds at least $25,000.  MCL 600.8301 ("The district court has exclusive jurisdiction in civil actions when the amount in

controversy does not exceed $25,000.00.")

23.     <u>Punitive and Exemplary Damages</u>.  Claims for punitive and exemplary damages should be included in the amount-in-controversy calculation, "unless it is apparent to a legal certainty that such cannot be recovered."  *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 572 (6th Cir. 2001); *see also Lauderdale v. Wells Fargo Home Mortg.*, No. 10-CV-13229, 2010 WL 4789148, at *2 (E.D. Mich. Nov. 17, 2010) ("Exemplary damages are akin to punitive damages.").  Accordingly, they are properly included in the amount-in-controversy calculation.

24.     <u>Emotional Distress and Reputational Harm Damages</u>.  Plaintiff claims she is entitled to damages for "emotional distress" and "reputational injury."  (*See* State Court Documents, Am. Compl., Prayer for Relief, subsection (A).)  In the Sixth Circuit, when "state law at least arguably permits the type of damages claimed, the amount in controversy requirement will be satisfied even if it is unlikely that the plaintiff can recover an amount exceeding the jurisdictional requirement."  *Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005); *see also Liu v. Genji, LLC*, No. 1:17-CV-2560, 2018 WL 1325757, at *2 (N.D. Ohio Mar. 14, 2018) (denying plaintiff's motion to remand because "as long as state law at least arguably permits the type of damages claimed, the amount in controversy requirement will be satisfied even if it is unlikely that the plaintiff can recover an amount exceeding the jurisdictional requirement.") (internal quotations and citations omitted)).

25.     Michigan law does not foreclose damages for emotional distress and reputational harm. *See Apostle v. Booth Newspapers, Inc.*, 572 F. Supp. 897, 905 (W.D. Mich. 1983), *supplemented*, 577 F. Supp. 962 (W.D. Mich. 1984) ("in Michigan a plaintiff . . . may recover for emotional distress as well as injury to reputation").

26.     Juries regularly render verdicts exceeding $75,000 in cases involving similar causes of action. *See Mike Vaughn Custom Sports, Inc. v. Chrystem Piku*, Case No. 12-13083, 2014 WL 5501896 (E.D. Mich. Sept. 10, 2014) (awarding $322,200 in suit that included claims for defamation, civil conspiracy, and interference with economic advantage); *see also Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 402, 417 (6th Cir. 2014) (jury awarded "verdict in favor of [plaintiff] for $38,000 in compensatory damages and $300,000 in punitive damages" on claims for user-generated content published by online tabloid later vacated on Section 230 grounds).

27.     The foregoing demonstrates that the jurisdictional amount-in-controversy requirement under § 1332(a) is satisfied.

## V.     <u>NOTICE</u>

28.     As required by 28 U.S.C. § 1446(d), Tea is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of the Notice of Removal with the Clerk of the Circuit Court of Wayne County, Michigan.

## VI.   **CONCLUSION**

Defendant Tea hereby removes the State Court Action from the Circuit Court of Wayne County, Michigan to the United States District Court for the Eastern District of Michigan, Southern Division.

Respectfully submitted,

Dated: October 20, 2025

*/s/ Katherine L. Pullen*
Katherine L. Pullen (P74511)
Amber J. Krupp (P88317)
WARNER NORCROSS + JUDD LLP
2715 Woodward Avenue, Suite 300
Detroit, Michigan 48201
(313) 546-6000
kpullen@wnj.com
akrupp@wnj.com

*/s/ Admission to be sought for:*
Bethany G. Lukitsch
Baker & Hostetler LLP
1900 Avenue of the Stars
Suite 2700
Los Angeles, CA  90067-4301
310.442.8856
blukitsch@bakerlaw.com

Cameron S Friedman
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY  10111
212.589.4667
cfriedman@bakerlaw.com

## **PROOF OF SERVICE**

Katherine L. Pullen states that on October 20, 2025, she caused the foregoing

document to be served on Plaintiff's counsel by email to dmakled@makledlaw.com

and first-class mail, postage prepaid, to the address set forth below:

Daniel B. Makled
DAN MAKLED LAW
23451 Ford Road
Dearborn, Michigan 48128

Dated: October 20, 2025                    */s/ Katherine L. Pullen*
                                           Katherine L. Pullen

# State Court Documents

# Service of Process
## Information Sheet

| | | |
|---|---|---|
| **Date Served** | : | 09/30/2025 10:23 AM CST |
| **Company Name** | : | TEA DATING ADVICE INC. |
| **State** | : | California |
| **Entity ID** | : | 5290621 |
| **SOP Classification** | : | Harassment |
| **Court/Agency** | : | Circuit Court For The County Of Wayne |
| **Document Type** | : | Summons |
| **Nature of Action** | : | Civil |
| **Case/Reference Number** | : | 25-011087-No |
| **How Served** | : | Mail |
| **Served By / Plaintiff** | : | Soha Elsayed |



00101 0028303742

## LEGALINC

☐ WALK-IN   ✓ MAIL

| STATE | CA | DATE | 2025-09-30 | TIME | 10:23:47 |

### Service Of Process Acceptance Form

| | |
|---|---|
| NAME OF COMPANY BEING SERVED | Tea Dating Advice Inc |
| SERVER'S NAME | N/A |
| SERVER'S PHONE | N/A |
| SERVER'S EMAIL | N/A |
| SERVER'S MAILING ADDRESS (For mail service only) | N/A |

**Server's Acknowledgment**

I confirm that I am serving documents to *Legalinc*, which is the registered agent for the company being served.

N/A

Server's Signature **(for walk-in service only)**

N/A

Date

Jesse Camarena

Acceptor/s Name (Please print clearly)

Acceptor's Signature

2025-09-30

Date

| SHIPMENT IDENTIFIER | 01999b8d-1ea4-7807-9fe9-d34265f61045 |

Approved, SCAO

| | Original - Court | 2nd copy - Plaintiff |
|---|---|---|
| | 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN | | CASE NUMBER |
|---|---|---|
| **JUDICIAL DISTRICT** | **SUMMONS** | 25-011087-NO |
| Third **JUDICIAL CIRCUIT** | | |
| **COUNTY** | | |

Court address _____                                    Court telephone number

| Plaintiff's name, address, and telephone number | | Defendant's name, address, and telephone number |
|---|---|---|
| Soha Elsayed | v | Tea Dating Advice, Inc. |

Plaintiff's attorney bar number, address, and telephone number
Daniel B. Makled (P78777)
DAN MAKLED LAW
23451 Ford Rd
Dearborn, MI 48128
(313) 744-4878 / F: (313) 447-3860

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in   ☐ this court,   ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action   ☐ remains   ☐ is no longer   pending.

Summons section completed by court clerk.            **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:

1. You are being sued.

2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).

3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| 9/18/2025 | 12/18/2025 | /s/ Jacqueline Ruff |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01**   (3/23)   **SUMMONS**
SRA

MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

25-011087-NO  FILED IN MY OFFICE   Cathy M. Garrett   WAYNE COUNTY CLERK   9/18/2025 1:46 PM   Lori Fletcher

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

SOHA ELSAYED,

        Plaintiff,

v.

JOHN DOE, an individual whose
true identity is unknown; and
TEA DATING ADVICE, INC.,
a corporation,

        Defendants.

Case No. 25-011087-NO
Hon.  Edward Ewell, Jr.

---

DANIEL B. MAKLED (P78777)
DAN MAKLED LAW
Attorneys for Plaintiff
23451 Ford Rd
Dearborn, Michigan 48128
(313) 744-4878 / F: (313) 447-3860
dmakled@makledlaw.com

---

### FIRST AMENDED COMPLAINT

**NOW COMES** Plaintiff, SOHA ELSAYED, by and through her counsel, DAN

MAKLED LAW, and for her Complaint against Defendants John Doe and TEA DATING

ADVICE, INC. ("Tea" or "Defendant Tea"), alleges as follows:

### I.    PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Soha Elsayed ("Plaintiff" or "Elsayed") is an adult individual and a resident of

Wayne County, Michigan. Plaintiff is a business owner and operates a lawful business

within Wayne County.

1

2. Defendant JOHN DOE is a natural person or persons who, at all relevant times, published one or more false, defamatory, and malicious statements about Plaintiff on an online platform operated by Defendant Tea. The true name or names and capacities of JOHN DOE are unknown to Plaintiff at this time; JOHN DOE will be identified and joined once the Court compels Defendant Tea to produce the identifying information that Tea has wrongfully withheld.

3. Defendant TEA DATING ADVICE, INC. ("Tea") is a for-profit corporation that operates an interactive online social platform / mobile application (commonly referred to as the "Tea App") where users may post content and communicate with other users. At all relevant times, Tea marketed, controlled, and operated its platform and provided online accounts to users with usernames such as the accounts at issue in this matter. Tea transacts business in Michigan, derives revenue from users and advertisers, and its platform is accessible and used by Michigan residents including Plaintiff.

4. This Court has subject matter jurisdiction over this action pursuant to MCL 600.605 because this civil action seeks monetary damages in excess of the jurisdictional minimum and seeks equitable relief. Venue is proper in Wayne County pursuant to MCL 600.1621 because Plaintiff resides in this county and the injury to Plaintiff's reputation and business occurred in this county.

## II.   **INTRODUCTORY SUMMARY**

5. This case arises from a coordinated and malicious campaign of online defamation hosted on the Tea App that falsely accused Plaintiff — by name and photograph — of immoral, criminal, and business-destructive acts. The defamatory postings were created and published by anonymous user accounts on Tea's platform.

2

6. Plaintiff did everything required of a reasonable victim: upon learning of the posts, Plaintiff's counsel provided Tea with notice and a formal preservation / production demand (dated July 17, 2025) seeking limited, non-content identifying information for the accounts that published the defamatory material (including, without limitation, internal account IDs, subscriber identifiers, login/IP logs and other non-content data sufficient to identify the users who posted the defamatory statements).

7. On July 24, 2025 — less than one week after receiving Plaintiff's preservation/production demand — a Tea representative (through counsel or in email exchange) expressly stated: "Hi Daniel — we will provide the requested documentation within the next week." That written assurance induced Plaintiff to refrain from immediate filing and to afford Tea an opportunity to produce the requested identifying information.

8. Despite that explicit written promise, Tea has repeatedly failed and refused to produce the promised identifying information. Instead, after retaining counsel (Baker & Hostetler), Tea changed course: it filed formal objections to the subpoena, invoked the Stored Communications Act and purported First Amendment concerns, and repeatedly delayed production while simultaneously representing that it was "searching" — only to claim at one point that an account Plaintiff plainly documented by screenshot "did not exist" in Tea's records. That denial was demonstrably false and was thereafter contradicted by a screenshot Plaintiff provided that plainly shows the post, the post's date, and the username "MAGICQUEEN10."

9. Tea's conduct — promising production and then engaging in evasive, inconsistent, and obstructive litigation posturing designed to prevent Plaintiff from identifying the actual tortfeasors — constitutes not only obstruction of discovery but also active shielding and

3

Not applicable

assisting of wrongdoers. Tea's obstruction has caused and continues to cause Plaintiff additional reputational damage, emotional distress, and economic loss.

10. Accordingly, Plaintiff brings this First Amended Complaint to (a) name Tea as a defendant, (b) hold Tea responsible for its role in enabling and shielding the publication of defamatory material, and (c) compel production and preservation of identifying information. Plaintiff seeks all available relief, including compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees and costs, and any other relief the Court deems just and proper.

### III.    FACTUAL ALLEGATIONS

11. On or about July 2025 one or more anonymous user accounts on the Tea App published a multi-part defamatory campaign that targeted Plaintiff and other women. The campaign included at least two separate but related posts:

12. a. Post A: A post displaying a photograph of four (4) women accompanied by the false and defamatory statement that the pictured women "sleep around with married men for money." That posting was false and defamatory per se.

13. b. Post B: A subsequent post that displayed Plaintiff's photograph and listed or otherwise identified Plaintiff's place of business and falsely alleged that Plaintiff was the individual responsible for the initial defamatory post (Post A) and/or that Plaintiff engaged in the alleged misconduct.

14. The postings were published under usernames including, but not necessarily limited to, **BABES123**, **GIRLYPOPSUMMER**, and **MAGICQUEEN10** (collectively, the "Subject Accounts").

4

15. The content of these postings was false. Plaintiff never engaged in the activities alleged; Plaintiff has not engaged in any criminal or similarly disreputable conduct as alleged; and the statements at issue were and are untrue.

16. The false statements were published to a large audience on Tea's platform and were widely accessible to the public — including to Plaintiff's customers, business associates, and members of the local community. The posts caused immediate and substantial reputational harm to Plaintiff, including but not limited to lost business, emotional distress, humiliation, and damage to professional relationships and standing.

17. Plaintiff's counsel sent a formal preservation and production demand to Tea on July 17, 2025, attaching a detailed subpoena/attachment laying out the narrow categories of non-content identifiers sought for the Subject Accounts.

18. On July 24, 2025, Tea (through its then-representative or counsel) responded by email with an express, written commitment: **"Hi Daniel — we will provide the requested documentation within the next week."** That promise was relied upon by Plaintiff and Plaintiff's counsel.

19. On or about September 5, 2025, counsel for Tea (Cameron) requested confirmation that Plaintiff would accept electronic service of Tea's response. Plaintiff's counsel confirmed electronic service for the response only while expressly preserving all rights and objections.

20. On September 9, 2025, counsel for Tea (Baker & Hostetler) served formal written objections to Plaintiff's subpoena. Those objections broadly invoked the Stored Communications Act ("SCA"), constitutional privacy concerns, and asserted procedural deficiencies — despite the prior written commitment to produce the requested documentation made by Tea on July 24, 2025.

5

21. On September 16, 2025, counsel for Tea emailed Plaintiff's counsel and asserted that Tea could not locate any user with the username "MAGICQUEEN10," and that Tea would not produce non-content identifiers without (i) a proper subpoena, (ii) a prima facie showing against any user, and (iii) an opportunity to provide notice to the users and a chance to object — and that "depending on the information at issue" a protective order might be required.

22. In response to Tea's September 16, 2025 email, Plaintiff's counsel immediately produced a screenshot of the exact post at issue showing the username **MAGICQUEEN10**, the post's content, and the date/time stamp visible on the screenshot. That screenshot directly contradicted Tea's claim that the username did not exist.

23. After receipt of the screenshot, Tea's counsel acknowledged receipt and stated they would "pass along" the picture, and then later responded that they had "received your email below and will respond as soon as possible." Tea's responses were, and remain, non-committal and evasive; no identifying non-content data sufficient to identify the Subject Account holders has been produced.

24. Plaintiff repeatedly narrowed her request to the minimal identifiers necessary to identify the account holders (internal account IDs, subscriber legal name, primary email address, primary phone, billing information, device IDs, and login/IP logs for the relevant timeframe). Plaintiff expressly offered to accept production of only non-content identifiers (i.e., no private messages or message contents) and to accept appropriate protective measures (a narrowly tailored protective order and a user notice procedure).

25. Nevertheless, Tea has continued to refuse to produce the requested non-content identifiers and has insisted on blanket defenses invoking the SCA and First Amendment that are inapplicable to narrow requests for non-content identifiers and non-content logs.

26. Tea's refusal to produce these basic non-content identifiers — after promising to do so on July 24, 2025 and after Plaintiff provided clear, direct evidence of the Subject Account posts — evidences an intentional pattern of shielding and protection of anonymous wrongdoers who have used Tea's platform to defame and harm Plaintiff and others.

27. Plaintiff has suffered ongoing and irreparable harm as a result of Tea's obstructive conduct, including continuing reputational injury, lost business opportunities, emotional distress, and increased legal expense necessary to identify and hold accountable the wrongdoers.

28. Plaintiff has also been contacted by members of the press regarding the defamatory posts and has been required to respond to media inquiries, further magnifying the reputational harm and public exposure of the false statements.

29. Plaintiff is informed and believes, and on that basis alleges, that Tea retains detailed account logs and subscriber information (including IP addresses, device identifiers, internal account IDs, subscriber contact and billing information, and verification/selfie metadata) that, if produced, would identify the person or persons behind the Subject Accounts. Tea has control of and exclusive access to these records.

30. Plaintiff is informed and believes, and on that basis alleges, that Tea's obstructive conduct was deliberate and motivated, at least in part, by a desire to avoid negative publicity, minimize administrative burdens, or protect certain users or classes of users — regardless of the wrongful harm inflicted on Plaintiff.

## IV.    CAUSES OF ACTION

### COUNT I - DEFAMATION (Against JOHN DOE)

31. Plaintiff realleges and incorporates by reference paragraphs 1 through 30 above as if fully restated herein.

32. The statements published by JOHN DOE as alleged above were false, defamatory, and published to third parties via the Tea App.

33. The statements identified Plaintiff by name and image and asserted facts highly damaging to Plaintiff's reputation and business.

34. JOHN DOE's statements were published with at least negligence as to their falsity, and in the alternative with actual malice, and without any reasonable basis in fact.

35. As a direct and proximate result of JOHN DOE's defamatory statements, Plaintiff has suffered special and general damages including but not limited to lost income, loss of business relationships, emotional distress, humiliation, and damage to reputation, in an amount to be proven at trial.

### COUNT II – AIDING AND ABETTING DEFAMATION (Against Tea)

36. Plaintiff realleges and incorporates by reference paragraphs 1 through 35 above as if fully restated herein.

37. At the time the defamatory statements were published and after Plaintiff provided notice on July 17, 2025, Tea knew or was willfully blind to the fact that the Subject Accounts were publishing false and defamatory material about Plaintiff.

38. Tea had the power and ability to identify the individuals responsible for the defamatory postings and to take prompt remedial action, but Tea failed to do so.

8

39. Tea promised on July 24, 2025 to produce identifying information and then intentionally withheld and obstructed production, thereby substantially assisting and facilitating the anonymous posters' ability to evade accountability.

40. By providing substantial assistance and encouragement to the anonymous wrongdoers (through its platform design, moderation failures, and subsequent shielding), Tea aided and abetted the publication and repetition of defamatory statements.

41. As a direct and proximate result of Tea's aiding and abetting, Plaintiff has suffered and continues to suffer monetary and non-monetary harm including but not limited to reputational injury, emotional distress, lost business, and attorney fees and costs.

## COUNT III – CIVIL CONSPIRACY (Against Tea and JOHN DOE)

42. Plaintiff realleges and incorporates by reference paragraphs 1 through 41 above as if fully restated herein.

43. Tea and JOHN DOE, by words and conduct, formed an agreement, combination, or understanding (express or implied) to obscure, conceal, and shield the identity of the persons posting false and defamatory statements about Plaintiff.

44. The agreement and covert acts in furtherance thereof included, but are not limited to: (a) Tea's initial promise to produce identifiers followed by refusal; (b) Tea's representations that accounts did not exist when Plaintiff provided direct evidence they did; and (c) Tea's invocation of broad, overbroad legal defenses in order to avoid disclosure of identifying information.

45. As a proximate result of the conspiracy, Plaintiff suffered damages, including but not limited to reputational harm, lost business, emotional distress, and further costs of

9

litigation. ☐  Plaintiff realleges and incorporates by reference paragraphs 1 through 43 above as if fully restated herein.

### COUNT IV – TORTIOUS INTERFERENCE WITH PROSPECTIVE CIVIL ACTION (Against Tea)

46. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 above as if fully restated herein.

47. Plaintiff had a reasonable expectation of being able to discover and pursue civil claims against the anonymous users responsible for the defamatory posts.

48. Tea intentionally and wrongfully interfered with Plaintiff's expectancy by intentionally withholding or concealing identifying information necessary to commence and prosecute claims against the user(s) — thereby preventing and delaying Plaintiff's ability to vindicate her rights in a court of law.

49. Tea's conduct was intentional, unjustified, and done with malice or with reckless disregard for Plaintiff's rights.

50. As a direct and proximate result, Plaintiff has suffered monetary damages and irreparable injury.

### COUNT V – NEGLIGENCE (Against Tea)

51. Plaintiff realleges and incorporates by reference paragraphs 1 through 50 above as if fully restated herein.

52. Upon receipt of Plaintiff's July 17, 2025 preservation demand, Tea owed Plaintiff a duty to preserve relevant evidence and to act reasonably and competently in responding to requests for information intended to identify wrongdoers who used its platform to defame a private individual.

53. Tea breached this duty by failing to preserve and produce relevant non-content identifiers, by making false or misleading representations regarding account existence, and by unreasonably delaying production despite the clear interests of justice and Plaintiff's reliance on Tea's express promise.

54. Tea's breach was a proximate cause of Plaintiff's increased damages, including additional reputational injury, emotional distress, business losses, and attorney fees.

## COUNT VI – SPOLIATION / CONCEALMENT OF EVIDENCE (Against Tea)

55. Plaintiff realleges and incorporates by reference paragraphs 1 through 54 above as if fully restated herein.

56. From the moment Plaintiff notified Tea on July 17, 2025, Tea had an affirmative duty to preserve all records and electronically stored information relevant to the Subject Accounts, including but not limited to subscriber information, login/IP logs, device IDs, verification/selfie metadata, uploaded photographs, and deleted content.

57. Tea has intentionally, willfully, or recklessly concealed and refused to produce relevant records; and Tea has represented inconsistent facts (including representing that an account did not exist when Plaintiff provided a screenshot proving otherwise), all of which constitute spoliation or concealment of relevant evidence.

58. Plaintiff has been prejudiced by Tea's spoliation/concealment, including by being prevented from timely identifying and pursuing the actual tortfeasors, and by being subjected to ongoing reputational harm and legal expense.

**COUNT VII – DECLARATORY AND INJUNCTIVE RELIEF (Against Tea)**

59. Plaintiff realleges and incorporates by reference paragraphs 1 through 58 above as if fully restated herein.

60. An actual controversy exists between Plaintiff and Tea regarding Tea's obligations to preserve and produce non-content identifying information relating to the Subject Accounts, and whether Tea may invoke the SCA or First Amendment to avoid producing the narrow non-content identifiers requested.

61. Plaintiff seeks a declaratory judgment (pursuant to MCL 691.501 et seq. and equitable principles) declaring that Tea's unilateral refusal to produce the non-content identifiers (internal account IDs, subscriber identifiers, login/IP logs and similar non-content records) is unlawful and that Tea must produce these categories of information on a reasonable schedule.

62. Plaintiff further seeks injunctive relief compelling Tea to (a) preserve all records and ESI relating to the Subject Accounts; (b) produce the non-content identifiers within seven (7) days of the Court's order; and (c) produce a sworn declaration from a Tea custodian describing Tea's account normalization/aliasing procedures and attesting to whether the Subject Accounts exist and, if so, listing their canonical internal account IDs.

**COUNT VIII – ATTORNEYS' FEES, COSTS, AND PUNITIVE DAMAGES**

63. Plaintiff realleges and incorporates by reference paragraphs 1 through 62 above as if fully restated herein.

64. As a direct result of Tea's misconduct and obstruction, Plaintiff has been forced to incur substantial attorney fees and costs to obtain information that Tea expressly promised to produce on July 24, 2025.

65. Tea's conduct was willful, wanton, malicious, and oppressive, justifying an award of punitive damages to punish Tea and to deter similar future misconduct by other platforms that would seek to shield wrongdoers and frustrate victims' ability to obtain redress.

## V.     **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, as follows:

A. For compensatory damages in an amount to be proven at trial, including general damages for reputational injury, humiliation, and emotional distress, and special damages for economic loss and lost business opportunities;

B. For treble, exemplary, and punitive damages against Tea in an amount sufficient to punish willful misconduct and to deter similar wrongdoing by other online platforms;

C. For an order compelling Tea to preserve and produce, within seven (7) days of the Court's order, the following categories of non-content information for the Subject Accounts (including internal account IDs and all aliases): (i) internal account ID(s); (ii) subscriber full legal name; (iii) primary email address; (iv) primary phone number (if any); (v) billing address (if any); (vi) device identifiers (IMEI, IMSI, UDID, MAC); (vii) login/IP logs (date/time and IP addresses) for the time period covering the dates of the defamatory posts ±7 days; (viii) any verification/selfie metadata associated with account creation or facial verification (timestamps/location if available); and (ix) any documentation concerning account aliasing or normalization rules;

D. For an order compelling Tea to produce, within seven (7) days, a sworn declaration by a Tea records custodian stating whether the username "MAGICQUEEN10" exists in Tea's

13

system, identifying any canonical/internal account ID(s) or alias that corresponds to that username, and explaining Tea's account normalization/aliasing process;

E. For injunctive relief ordering Tea to continue to preserve all records and ESI related to the Subject Accounts pending further order of the Court, and to implement reasonable measures to prevent spoliation of evidence;

F. For a declaratory judgment that Tea's refusal to produce the narrow categories of non-content identifying information requested is unlawful and that Tea must produce such information subject to a narrowly tailored protective order;

G. For reasonable attorneys' fees and costs incurred in pursuing this action and bringing motions to compel, pursuant to applicable statute and the Court's inherent powers;

H. For recovery of costs and sanctions for Tea's misconduct, including but not limited to sanctions for spoliation, concealment, and bad-faith litigation conduct;

I. For pre- and post-judgment interest as allowed by law; and

J. For such other and further relief as the Court deems just and proper.

Respectfully submitted:

DAN MAKLED LAW
Attorneys for Plaintiff

/s/ Daniel B. Makled
Daniel B. Makled (P78777)
dmakled@makledlaw.com

Dated: September 18th, 2025

14

063S0001462142



$11.31⁰
US POSTAGE
FIRST-CLASS
FROM 48128
09/19/2025
Stamps.com

CERTIFIED MAIL®

9589 0710 5270 2007 8233 68

LEGALINC REGISTERED AGENTS, INC.
500 N BRAND BLVD STE 890
GLENDALE CA 91203-3398



DAN MAKLED LAW
23451 FORD RD DEARBORN, MI 48128

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>Third **JUDICIAL CIRCUIT**<br>COUNTY | **SUMMONS** | **CASE NUMBER**<br>25-011087-NO |
|---|---|---|

| Court address | Court telephone number |
|---|---|

| Plaintiff's name, address, and telephone number<br>Soha Elsayed | v | Defendant's name, address, and telephone number<br>Tea Dating Advice, Inc. |
|---|---|---|

Plaintiff's attorney bar number, address, and telephone number
Daniel B. Makled (P78777)
DAN MAKLED LAW
23451 Ford Rd
Dearborn, MI 48128
(313) 744-4878 / F: (313) 447-3860

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>9/18/2025 | Expiration date*<br>12/18/2025 | Court clerk<br>/s/ Jacqueline Ruff |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (3/23) **SUMMONS**         MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105
SRA

25-011087-NO FILED IN MY OFFICE    Cathy M. Garrett    WAYNE COUNTY CLERK    9/19/2025 11:40 AM    Jacqueline Ruff

**Summons** (3/23)

Case Number 25-011087-NO

## PROOF OF SERVICE

**TO PROCESS SERVER**: You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

### CERTIFICATE OF SERVICE / NONSERVICE

☐ I served ☐ personally ☐ by registered or certified mail, return receipt requested, and delivery restricted to the the addressee (copy of return receipt attached) a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| Place or address of service | |
| Attachments (if any) | |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of a copy of the summons and complaint, together with

_____ on _____
Attachments (if any)                                              Date and time

_____ on behalf of _____
Signature

_____
Name (type or print)

MCL 600.1910, MCR 2.104, MCR 2.105

Yolanda Payne    7/17/2025 1:47 PM    WAYNE COUNTY CLERK    Cathy M. Garrett    IN MY OFFICE    FILED    25-011087-NO

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

SOHA ELSAYED,

Plaintiff,                                    Case No. 25-                    -NO
                                              Hon.

v.

JOHN DOE, an individual whose
true identity is unknown,

Defendant.

_____

DANIEL B. MAKLED (P78777)
DAN MAKLED LAW
Attorneys for Plaintiff
23451 Ford Rd
Dearborn, Michigan 48128
(313) 744-4878 / F: (313) 447-3860
dmakled@makledlaw.com

_____

## **COMPLAINT**

There is no other civil action between these parties arising
out of the same transaction or occurrence as alleged in the
Complaint, pending in this court, nor has any such action
been previously filed and dismissed or transferred after
having been assigned to a judge, nor do I know of any other
civil action not between these parties arising out of the same
transaction or occurrence as alleged in his Complaint that is
either pending, or was previously filed and dismissed,
transferred, or otherwise disposed of after having been
assigned to a judge in this court.

_/s/ DANIEL B. MAKLED_

1

**NOW COMES,** Plaintiff, SOHA ELSAYED, by and through her counsel, DAN

MAKLED LAW, and for her Complaint against Defendant John Doe, states as follows:

## COMMON ALLEGATIONS

1. Plaintiff Soha Elsayed is an individual residing in Wayne County, Michigan, and is a respected member of her community with an established reputation for integrity and professionalism.

2. Defendant John Doe is an unknown individual who, under the protection of anonymity provided by a social gossip platform known as the "Tea App," maliciously and recklessly defamed Plaintiff with calculated intent to humiliate, discredit, and emotionally harm her.

3. This Court has subject matter jurisdiction pursuant to MCL 600.605 and personal jurisdiction over this action under MCL 600.705 because the effects of the wrongful conduct occurred in this jurisdiction.

4. Venue is proper in Wayne County pursuant to MCL 600.1621(a), as the harm to Plaintiff occurred in this County.

## FACTUAL BACKGROUND

5. The Tea App is a downloadable mobile application marketed to users as a space for anonymously sharing gossip and rumors—often encouraging unverified, inflammatory, and harmful statements about individuals in their local communities.

6. On or around July 2025, a user (or users) operating under one or more screen names— including but not limited to **BABES123, GIRLYPOPSUMMER, and MAGICQUEEN10**—published a series of vile and defamatory posts on the Tea App.

2

7. The first post included a photograph of four women and accused them of "sleeping around with married men for money"—an accusation that is not only untrue, but inherently defamatory and damaging to anyone associated with the post.

8. Shortly thereafter, a separate post was made which identified Plaintiff by name, displayed her photograph, and listed her place of business, falsely alleging that Plaintiff was the originator of the defamatory post about the four women.

9. At no time did Plaintiff author, distribute, or have any connection whatsoever to the original post. The accusation is a fabrication, created solely for the purpose of targeting Plaintiff with malice and personal animus.

10. Defendant's conduct amounts to nothing short of a digital character assassination— publicly branding Plaintiff as both a sex worker and a malicious liar, weaponizing a public platform to invite social and professional ostracization.

11. The accusations were published publicly and made available to thousands of users who access the Tea App, including members of Plaintiff's own community and professional network.

12. As a direct result of Defendant's malicious posts, Plaintiff has suffered and continues to suffer from:

Severe emotional distress

Anxiety and humiliation

Damage to her personal relationships

Loss of business reputation

Fear for her safety and well-being

3

13. Plaintiff has taken extensive steps to remove the false content and mitigate its impact, including contacting the Tea App, which has refused to cooperate absent a formal subpoena—leaving Plaintiff with no recourse but to file this action to uncover Defendant's identity and seek full accountability.

## COUNT II – FALSE LIGHT INVASION OF PRIVACY

14. Plaintiff incorporates all prior allegations.

15. Defendant placed Plaintiff before the public in a false light by misrepresenting her as a promiscuous individual who maliciously spreads damaging lies about others.

16. This portrayal would be highly offensive to a reasonable person, particularly within Plaintiff's cultural, professional, and religious context.

17. Defendant acted intentionally, recklessly, and without regard to the truth.

18. Plaintiff has suffered severe emotional injury, reputational damage, and mental anguish as a result.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

19. Plaintiff incorporates all prior allegations.

20. Defendant's actions in targeting Plaintiff with explicit and inflammatory falsehoods were outrageous, willful, and designed to inflict maximum humiliation.

21. The conduct exceeds all bounds of decency tolerated in a civilized society and was specifically calculated to injure Plaintiff emotionally and socially.

22. Plaintiff has suffered emotional distress so severe that no reasonable person could be expected to endure it, including loss of sleep, panic symptoms, and profound fear of public scrutiny.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Soha Elsayed respectfully requests that this Court:

23. A.   Enter   judgment   in   her   favor   against   Defendant   John   Doe;

B. Award compensatory, exemplary, and punitive damages in excess of $25,000;

C. Enter an order allowing Plaintiff to conduct immediate discovery for the purpose of subpoenaing the Tea App and its affiliates to uncover the identity of Defendant;

D. Grant leave to amend this complaint once Defendant's true identity is discovered;

E. Award attorney fees, interest, costs, and any other relief the Court deems just and proper.

Respectfully submitted:

DAN MAKLED LAW
Attorneys for Plaintiff

 /s/ Daniel B. Makled
Daniel B. Makled (P78777)
dmakled@makledlaw.com

Dated: July 17th, 2025

5

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

SOHA ELSAYED,

     Plaintiff,

Case No. 25-011087-NO
Hon.  Edward Ewell, Jr.

v.

JOHN DOE, an individual whose
true identity is unknown; and
TEA DATING ADVICE, INC.,
a corporation,

     Defendants.

---

DANIEL B. MAKLED (P78777)
DAN MAKLED LAW
Attorneys for Plaintiff
23451 Ford Rd
Dearborn, Michigan 48128
(313) 744-4878 / F: (313) 447-3860
dmakled@makledlaw.com

---

## **FIRST AMENDED COMPLAINT**

**NOW COMES** Plaintiff, SOHA ELSAYED, by and through her counsel, DAN

MAKLED LAW, and for her Complaint against Defendants John Doe and TEA DATING

ADVICE, INC. ("Tea" or "Defendant Tea"), alleges as follows:

### I.    **PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Soha Elsayed ("Plaintiff" or "Elsayed") is an adult individual and a resident of
   Wayne County, Michigan. Plaintiff is a business owner and operates a lawful business
   within Wayne County.

1

2. Defendant JOHN DOE is a natural person or persons who, at all relevant times, published one or more false, defamatory, and malicious statements about Plaintiff on an online platform operated by Defendant Tea. The true name or names and capacities of JOHN DOE are unknown to Plaintiff at this time; JOHN DOE will be identified and joined once the Court compels Defendant Tea to produce the identifying information that Tea has wrongfully withheld.

3. Defendant TEA DATING ADVICE, INC. ("Tea") is a for-profit corporation that operates an interactive online social platform / mobile application (commonly referred to as the "Tea App") where users may post content and communicate with other users. At all relevant times, Tea marketed, controlled, and operated its platform and provided online accounts to users with usernames such as the accounts at issue in this matter. Tea transacts business in Michigan, derives revenue from users and advertisers, and its platform is accessible and used by Michigan residents including Plaintiff.

4. This Court has subject matter jurisdiction over this action pursuant to MCL 600.605 because this civil action seeks monetary damages in excess of the jurisdictional minimum and seeks equitable relief. Venue is proper in Wayne County pursuant to MCL 600.1621 because Plaintiff resides in this county and the injury to Plaintiff's reputation and business occurred in this county.

## II. INTRODUCTORY SUMMARY

5. This case arises from a coordinated and malicious campaign of online defamation hosted on the Tea App that falsely accused Plaintiff — by name and photograph — of immoral, criminal, and business-destructive acts. The defamatory postings were created and published by anonymous user accounts on Tea's platform.

2

6.   Plaintiff did everything required of a reasonable victim: upon learning of the posts, Plaintiff's counsel provided Tea with notice and a formal preservation / production demand (dated July 17, 2025) seeking limited, non-content identifying information for the accounts that published the defamatory material (including, without limitation, internal account IDs, subscriber identifiers, login/IP logs and other non-content data sufficient to identify the users who posted the defamatory statements).

7.   On July 24, 2025 — less than one week after receiving Plaintiff's preservation/production demand — a Tea representative (through counsel or in email exchange) expressly stated: "Hi Daniel — we will provide the requested documentation within the next week." That written assurance induced Plaintiff to refrain from immediate filing and to afford Tea an opportunity to produce the requested identifying information.

8.   Despite that explicit written promise, Tea has repeatedly failed and refused to produce the promised identifying information. Instead, after retaining counsel (Baker & Hostetler), Tea changed course: it filed formal objections to the subpoena, invoked the Stored Communications Act and purported First Amendment concerns, and repeatedly delayed production while simultaneously representing that it was "searching" — only to claim at one point that an account Plaintiff plainly documented by screenshot "did not exist" in Tea's records. That denial was demonstrably false and was thereafter contradicted by a screenshot Plaintiff provided that plainly shows the post, the post's date, and the username "MAGICQUEEN10."

9.   Tea's conduct — promising production and then engaging in evasive, inconsistent, and obstructive litigation posturing designed to prevent Plaintiff from identifying the actual tortfeasors — constitutes not only obstruction of discovery but also active shielding and

3

assisting of wrongdoers. Tea's obstruction has caused and continues to cause Plaintiff additional reputational damage, emotional distress, and economic loss.

10. Accordingly, Plaintiff brings this First Amended Complaint to (a) name Tea as a defendant, (b) hold Tea responsible for its role in enabling and shielding the publication of defamatory material, and (c) compel production and preservation of identifying information. Plaintiff seeks all available relief, including compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees and costs, and any other relief the Court deems just and proper.

### III. FACTUAL ALLEGATIONS

11. On or about July 2025 one or more anonymous user accounts on the Tea App published a multi-part defamatory campaign that targeted Plaintiff and other women. The campaign included at least two separate but related posts:

12. a. Post A: A post displaying a photograph of four (4) women accompanied by the false and defamatory statement that the pictured women "sleep around with married men for money." That posting was false and defamatory per se.

13. b. Post B: A subsequent post that displayed Plaintiff's photograph and listed or otherwise identified Plaintiff's place of business and falsely alleged that Plaintiff was the individual responsible for the initial defamatory post (Post A) and/or that Plaintiff engaged in the alleged misconduct.

14. The postings were published under usernames including, but not necessarily limited to, **BABES123**, **GIRLYPOPSUMMER**, and **MAGICQUEEN10** (collectively, the "Subject Accounts").

4

15. The content of these postings was false. Plaintiff never engaged in the activities alleged; Plaintiff has not engaged in any criminal or similarly disreputable conduct as alleged; and the statements at issue were and are untrue.

16. The false statements were published to a large audience on Tea's platform and were widely accessible to the public — including to Plaintiff's customers, business associates, and members of the local community. The posts caused immediate and substantial reputational harm to Plaintiff, including but not limited to lost business, emotional distress, humiliation, and damage to professional relationships and standing.

17. Plaintiff's counsel sent a formal preservation and production demand to Tea on July 17, 2025, attaching a detailed subpoena/attachment laying out the narrow categories of non-content identifiers sought for the Subject Accounts.

18. On July 24, 2025, Tea (through its then-representative or counsel) responded by email with an express, written commitment: **"Hi Daniel — we will provide the requested documentation within the next week."** That promise was relied upon by Plaintiff and Plaintiff's counsel.

19. On or about September 5, 2025, counsel for Tea (Cameron) requested confirmation that Plaintiff would accept electronic service of Tea's response. Plaintiff's counsel confirmed electronic service for the response only while expressly preserving all rights and objections.

20. On September 9, 2025, counsel for Tea (Baker & Hostetler) served formal written objections to Plaintiff's subpoena. Those objections broadly invoked the Stored Communications Act ("SCA"), constitutional privacy concerns, and asserted procedural deficiencies — despite the prior written commitment to produce the requested documentation made by Tea on July 24, 2025.

21. On September 16, 2025, counsel for Tea emailed Plaintiff's counsel and asserted that Tea could not locate any user with the username "MAGICQUEEN10," and that Tea would not produce non-content identifiers without (i) a proper subpoena, (ii) a prima facie showing against any user, and (iii) an opportunity to provide notice to the users and a chance to object — and that "depending on the information at issue" a protective order might be required.

22. In response to Tea's September 16, 2025 email, Plaintiff's counsel immediately produced a screenshot of the exact post at issue showing the username **MAGICQUEEN10**, the post's content, and the date/time stamp visible on the screenshot. That screenshot directly contradicted Tea's claim that the username did not exist.

23. After receipt of the screenshot, Tea's counsel acknowledged receipt and stated they would "pass along" the picture, and then later responded that they had "received your email below and will respond as soon as possible." Tea's responses were, and remain, non-committal and evasive; no identifying non-content data sufficient to identify the Subject Account holders has been produced.

24. Plaintiff repeatedly narrowed her request to the minimal identifiers necessary to identify the account holders (internal account IDs, subscriber legal name, primary email address, primary phone, billing information, device IDs, and login/IP logs for the relevant timeframe). Plaintiff expressly offered to accept production of only non-content identifiers (i.e., no private messages or message contents) and to accept appropriate protective measures (a narrowly tailored protective order and a user notice procedure).

25. Nevertheless, Tea has continued to refuse to produce the requested non-content identifiers and has insisted on blanket defenses invoking the SCA and First Amendment that are inapplicable to narrow requests for non-content identifiers and non-content logs.

26. Tea's refusal to produce these basic non-content identifiers — after promising to do so on July 24, 2025 and after Plaintiff provided clear, direct evidence of the Subject Account posts — evidences an intentional pattern of shielding and protection of anonymous wrongdoers who have used Tea's platform to defame and harm Plaintiff and others.

27. Plaintiff has suffered ongoing and irreparable harm as a result of Tea's obstructive conduct, including continuing reputational injury, lost business opportunities, emotional distress, and increased legal expense necessary to identify and hold accountable the wrongdoers.

28. Plaintiff has also been contacted by members of the press regarding the defamatory posts and has been required to respond to media inquiries, further magnifying the reputational harm and public exposure of the false statements.

29. Plaintiff is informed and believes, and on that basis alleges, that Tea retains detailed account logs and subscriber information (including IP addresses, device identifiers, internal account IDs, subscriber contact and billing information, and verification/selfie metadata) that, if produced, would identify the person or persons behind the Subject Accounts. Tea has control of and exclusive access to these records.

30. Plaintiff is informed and believes, and on that basis alleges, that Tea's obstructive conduct was deliberate and motivated, at least in part, by a desire to avoid negative publicity, minimize administrative burdens, or protect certain users or classes of users — regardless of the wrongful harm inflicted on Plaintiff.

7

## IV.   CAUSES OF ACTION

### COUNT I - DEFAMATION (Against JOHN DOE)

31. Plaintiff realleges and incorporates by reference paragraphs 1 through 30 above as if fully restated herein.

32. The statements published by JOHN DOE as alleged above were false, defamatory, and published to third parties via the Tea App.

33. The statements identified Plaintiff by name and image and asserted facts highly damaging to Plaintiff's reputation and business.

34. JOHN DOE's statements were published with at least negligence as to their falsity, and in the alternative with actual malice, and without any reasonable basis in fact.

35. As a direct and proximate result of JOHN DOE's defamatory statements, Plaintiff has suffered special and general damages including but not limited to lost income, loss of business relationships, emotional distress, humiliation, and damage to reputation, in an amount to be proven at trial.

### COUNT II – AIDING AND ABETTING DEFAMATION (Against Tea)

36. Plaintiff realleges and incorporates by reference paragraphs 1 through 35 above as if fully restated herein.

37. At the time the defamatory statements were published and after Plaintiff provided notice on July 17, 2025, Tea knew or was willfully blind to the fact that the Subject Accounts were publishing false and defamatory material about Plaintiff.

38. Tea had the power and ability to identify the individuals responsible for the defamatory postings and to take prompt remedial action, but Tea failed to do so.

8

39. Tea promised on July 24, 2025 to produce identifying information and then intentionally withheld and obstructed production, thereby substantially assisting and facilitating the anonymous posters' ability to evade accountability.

40. By providing substantial assistance and encouragement to the anonymous wrongdoers (through its platform design, moderation failures, and subsequent shielding), Tea aided and abetted the publication and repetition of defamatory statements.

41. As a direct and proximate result of Tea's aiding and abetting, Plaintiff has suffered and continues to suffer monetary and non-monetary harm including but not limited to reputational injury, emotional distress, lost business, and attorney fees and costs.

### COUNT III – CIVIL CONSPIRACY (Against Tea and JOHN DOE)

42. Plaintiff realleges and incorporates by reference paragraphs 1 through 41 above as if fully restated herein.

43. Tea and JOHN DOE, by words and conduct, formed an agreement, combination, or understanding (express or implied) to obscure, conceal, and shield the identity of the persons posting false and defamatory statements about Plaintiff.

44. The agreement and covert acts in furtherance thereof included, but are not limited to: (a) Tea's initial promise to produce identifiers followed by refusal; (b) Tea's representations that accounts did not exist when Plaintiff provided direct evidence they did; and (c) Tea's invocation of broad, overbroad legal defenses in order to avoid disclosure of identifying information.

45. As a proximate result of the conspiracy, Plaintiff suffered damages, including but not limited to reputational harm, lost business, emotional distress, and further costs of

litigation. □ Plaintiff realleges and incorporates by reference paragraphs 1 through 43 above as if fully restated herein.

## COUNT IV – TORTIOUS INTERFERENCE WITH PROSPECTIVE CIVIL ACTION (Against Tea)

46. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 above as if fully restated herein.

47. Plaintiff had a reasonable expectation of being able to discover and pursue civil claims against the anonymous users responsible for the defamatory posts.

48. Tea intentionally and wrongfully interfered with Plaintiff's expectancy by intentionally withholding or concealing identifying information necessary to commence and prosecute claims against the user(s) — thereby preventing and delaying Plaintiff's ability to vindicate her rights in a court of law.

49. Tea's conduct was intentional, unjustified, and done with malice or with reckless disregard for Plaintiff's rights.

50. As a direct and proximate result, Plaintiff has suffered monetary damages and irreparable injury.

## COUNT V – NEGLIGENCE (Against Tea)

51. Plaintiff realleges and incorporates by reference paragraphs 1 through 50 above as if fully restated herein.

52. Upon receipt of Plaintiff's July 17, 2025 preservation demand, Tea owed Plaintiff a duty to preserve relevant evidence and to act reasonably and competently in responding to requests for information intended to identify wrongdoers who used its platform to defame a private individual.

10

53. Tea breached this duty by failing to preserve and produce relevant non-content identifiers, by making false or misleading representations regarding account existence, and by unreasonably delaying production despite the clear interests of justice and Plaintiff's reliance on Tea's express promise.

54. Tea's breach was a proximate cause of Plaintiff's increased damages, including additional reputational injury, emotional distress, business losses, and attorney fees.

### COUNT VI – SPOLIATION / CONCEALMENT OF EVIDENCE (Against Tea)

55. Plaintiff realleges and incorporates by reference paragraphs 1 through 54 above as if fully restated herein.

56. From the moment Plaintiff notified Tea on July 17, 2025, Tea had an affirmative duty to preserve all records and electronically stored information relevant to the Subject Accounts, including but not limited to subscriber information, login/IP logs, device IDs, verification/selfie metadata, uploaded photographs, and deleted content.

57. Tea has intentionally, willfully, or recklessly concealed and refused to produce relevant records; and Tea has represented inconsistent facts (including representing that an account did not exist when Plaintiff provided a screenshot proving otherwise), all of which constitute spoliation or concealment of relevant evidence.

58. Plaintiff has been prejudiced by Tea's spoliation/concealment, including by being prevented from timely identifying and pursuing the actual tortfeasors, and by being subjected to ongoing reputational harm and legal expense.

### COUNT VII – DECLARATORY AND INJUNCTIVE RELIEF (Against Tea)

59. Plaintiff realleges and incorporates by reference paragraphs 1 through 58 above as if fully restated herein.

60. An actual controversy exists between Plaintiff and Tea regarding Tea's obligations to preserve and produce non-content identifying information relating to the Subject Accounts, and whether Tea may invoke the SCA or First Amendment to avoid producing the narrow non-content identifiers requested.

61. Plaintiff seeks a declaratory judgment (pursuant to MCL 691.501 et seq. and equitable principles) declaring that Tea's unilateral refusal to produce the non-content identifiers (internal account IDs, subscriber identifiers, login/IP logs and similar non-content records) is unlawful and that Tea must produce these categories of information on a reasonable schedule.

62. Plaintiff further seeks injunctive relief compelling Tea to (a) preserve all records and ESI relating to the Subject Accounts; (b) produce the non-content identifiers within seven (7) days of the Court's order; and (c) produce a sworn declaration from a Tea custodian describing Tea's account normalization/aliasing procedures and attesting to whether the Subject Accounts exist and, if so, listing their canonical internal account IDs.

### COUNT VIII – ATTORNEYS' FEES, COSTS, AND PUNITIVE DAMAGES

63. Plaintiff realleges and incorporates by reference paragraphs 1 through 62 above as if fully restated herein.

64. As a direct result of Tea's misconduct and obstruction, Plaintiff has been forced to incur substantial attorney fees and costs to obtain information that Tea expressly promised to produce on July 24, 2025.

65. Tea's conduct was willful, wanton, malicious, and oppressive, justifying an award of punitive damages to punish Tea and to deter similar future misconduct by other platforms that would seek to shield wrongdoers and frustrate victims' ability to obtain redress.

## V.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, as follows:

A. For compensatory damages in an amount to be proven at trial, including general damages for reputational injury, humiliation, and emotional distress, and special damages for economic loss and lost business opportunities;

B. For treble, exemplary, and punitive damages against Tea in an amount sufficient to punish willful misconduct and to deter similar wrongdoing by other online platforms;

C. For an order compelling Tea to preserve and produce, within seven (7) days of the Court's order, the following categories of non-content information for the Subject Accounts (including internal account IDs and all aliases): (i) internal account ID(s); (ii) subscriber full legal name; (iii) primary email address; (iv) primary phone number (if any); (v) billing address (if any); (vi) device identifiers (IMEI, IMSI, UDID, MAC); (vii) login/IP logs (date/time and IP addresses) for the time period covering the dates of the defamatory posts ±7 days; (viii) any verification/selfie metadata associated with account creation or facial verification (timestamps/location if available); and (ix) any documentation concerning account aliasing or normalization rules;

D. For an order compelling Tea to produce, within seven (7) days, a sworn declaration by a Tea records custodian stating whether the username "MAGICQUEEN10" exists in Tea's

system, identifying any canonical/internal account ID(s) or alias that corresponds to that username, and explaining Tea's account normalization/aliasing process;

E. For injunctive relief ordering Tea to continue to preserve all records and ESI related to the Subject Accounts pending further order of the Court, and to implement reasonable measures to prevent spoliation of evidence;

F. For a declaratory judgment that Tea's refusal to produce the narrow categories of non-content identifying information requested is unlawful and that Tea must produce such information subject to a narrowly tailored protective order;

G. For reasonable attorneys' fees and costs incurred in pursuing this action and bringing motions to compel, pursuant to applicable statute and the Court's inherent powers;

H. For recovery of costs and sanctions for Tea's misconduct, including but not limited to sanctions for spoliation, concealment, and bad-faith litigation conduct;

I. For pre- and post-judgment interest as allowed by law; and

J. For such other and further relief as the Court deems just and proper.

> Respectfully submitted:
>
> DAN MAKLED LAW
> Attorneys for Plaintiff
>
> /s/ Daniel B. Makled
> Daniel B. Makled (P78777)
> dmakled@makledlaw.com

Dated: September 18th, 2025

14