### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SOHA ELSAYED,

       Plaintiff,

v.

JOHN DOE, an individual whose true
identity is unknown; and TEA
DATING ADVICE, INC., a
corporation,

       Defendants.

Case No. 2:25-cv-13321-RJW-KGA

Hon. Robert J. White
Magistrate Judge Kimberly G. Altman

Removed from Wayne County Circuit
Court
Case No: 25-011087-NO
Hon. Edward Ewell, Jr.

---

### DEFENDANT TEA DATING ADVICE, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Tea Dating Advice, Inc. ("Tea"), by its undersigned counsel, hereby moves the Court to dismiss this action, pursuant to Section 230 of the Communications Decency Act and Federal Rule of Civil Procedure 12(b)(6). As required by Local Rule 7.1(a), Tea's counsel sought concurrence with Plaintiff's counsel via email on October 31, 2025 at approximately 11:30 am. Tea's counsel explained to Plaintiff's counsel the nature of the motion, its legal basis and offered to meet to discuss the relief requested. In response, Plaintiff's counsel informed Tea's counsel that Plaintiff agreed to stipulate to the dismissal of Counts II, IV, and VI in her First Amended Complaint. Accordingly, the parties filed a Joint Stipulation communicating the same on October 31, 2025. However, Plaintiff did not concur in

i

the relief sought in this Motion. Accordingly, Tea files the current Motion and accompanying Brief in Support.

WHEREFORE, in view of the foregoing, and based on the authorities set forth in the incorporated Brief in Support of the Motion, Tea respectfully asks the Court to grant this Motion to Dismiss.

Respectfully submitted,

Dated: November 3, 2025

/s/ Katherine L. Pullen
Katherine L. Pullen (P74511)
Amber J. Krupp (P88317)
WARNER NORCROSS + JUDD LLP
2715 Woodward Avenue, Suite 300
Detroit, Michigan 48201
(313) 546-6000
kpullen@wnj.com
akrupp@wnj.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SOHA ELSAYED,

          Plaintiff,

v.

JOHN DOE, an individual whose true
identity is unknown; and TEA
DATING ADVICE, INC., a
corporation,

          Defendants.

Case No. 2:25-cv-13321-RJW-KGA

Hon. Robert J. White
Magistrate Judge Kimberly G. Altman

Removed from Wayne County Circuit
Court
Case No: 25-011087-NO
Hon. Edward Ewell, Jr.

---

**DEFENDANT TEA DATING ADVICE, INC.'S BRIEF IN SUPPORT**
**OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

iii

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.   FACTUAL BACKGROUND ...........................................................................3

III.  ARGUMENT .....................................................................................................6

  A.  Section 230 Bars All of Plaintiff's Claims Against Tea.....................6

    i.   Tea is an Interactive Computer Service Provider. ...........................8

    ii.  Plaintiff's Claims Seek to Treat Tea as a Publisher. .......................9

    iii. The Posts Were Written by Third Parties. .....................................11

  B.  Plaintiff Likewise Fails to State Any Claim Against Tea. .................12

    i.   Plaintiff's Civil Conspiracy Claim Should Be Dismissed With
       Prejudice. ........................................................................................12

    ii.  Plaintiff's Negligence Claim Should Be Dismissed With Prejudice.........14

    iii. Plaintiff's Claims for Declaratory and Injunctive Relief Should be
       Disregarded. ...................................................................................17

    iv.  Plaintiff's Claim for Attorneys' Fees, Costs, and Punitive Damages are
        Similarly Improper. .......................................................................17

IV.   CONCLUSION.................................................................................................18

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

I.      Whether the federal immunity for online publishers created by Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"), bars Plaintiff Soha Elsayed ("Plaintiff")'s claims against Defendant Tea Dating Advice, Inc. ("Tea") because Tea is an interactive computer service provider and Plaintiff's claims all arise from third-party content posted on Tea's website.

Tea respectfully submits that the answer is "yes."

II.     Whether Plaintiff's claim for civil conspiracy should be dismissed because she fails to allege an agreement between Tea and John Doe.

Tea respectfully submits that the answer is "yes."

III.    Whether the Court should dismiss Plaintiff's negligence claim because Plaintiff has not alleged Tea owed her any actionable duty; her claim is either a duplicate of her spoliation claim (Claim VI) that she acknowledges Michigan does not recognize or a misplaced motion to compel.

Tea respectfully submits that the answer is "yes."

IV.     Whether the Court should dismiss Plaintiff's claims for declaratory and injunctive relief because they are not causes of action and Plaintiff is not entitled to the relief she seeks.

Tea respectfully submits that the answer is "yes."


V.     Whether the Court should dismiss Plaintiff's claim for attorneys' fees, costs, and punitive damages because they are remedies, not causes of action.

Tea respectfully submits that the answer is "yes."

## <u>TABLE OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

- 47 U.S.C. § 230

- *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017), *aff'd in part, dismissed in part sub nom. Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019)

- *Fremont Reorganizing Corp.*, 811 F. Supp. 2d 1323 (E.D. MI. 2011)

- *Jones v. Dirty World Ent. Recordings, LLC*, 755 F.3d 398 (6th Cir. 2014)

- *Knight Indus. & Assocs., Inc. v. Euro Herramientas, S.A.U.*, No. 2:12-CV-14405, 2013 WL 3773373 (E.D. Mich. July 17, 2013)

- *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263 (D.C. Cir. 2019)

- *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009)

- *Teel v. Meredith*, 774 N.W.2d 527 (Mich. Ct. App. 2009)

- *Wiener v. Miller*, No. 22-CV-7081 (GRB)(ARL), 2023 WL 6385816 (E.D.N.Y. Sept. 29, 2023)

# INDEX OF AUTHORITIES

**Cases**

*Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
  670 N.W.2d 569 (2003).........................................................................14

*Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.*,
  602 F. Supp. 2d 829 (W.D. Mich. 2008)..............................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................12

*Brikman v. Twitter, Inc.*,
  No. 19-cv-5143 (RPK) (CLP), 2020 WL 5594637 (E.D.N.Y. Sept. 17, 2020) ...11

*Buffman v. United States*,
  No. 13-CV-14024, 2017 WL 1228472 (E.D. Mich. Apr. 4, 2017)......................15

*Calvin v. Gen. Motors Corp.*,
  No. 190558, 1997 WL 33340259 (Mich. Ct. App. Nov. 4, 1997)......................15

*Cohen v. Facebook, Inc.*,
  252 F. Supp. 3d 140 (E.D.N.Y. 2017)...................................................10

*Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*,
  508 F.3d 327 (6th Cir. 2007) .................................................................4

*Cruz v. Cap. One, N.A.*,
  192 F. Supp. 3d 832 (E.D. Mich. 2016) ...............................................17

*D'Ambrosio v. Marino*,
  747 F.3d 378 (6th Cir. 2014)......................................................... 12, 13

*Doe v. Henry Ford Health Sys.*,
  865 N.W.2d 915 (Mich. Ct. App. 2014)...............................................16

*Early Detection Center, PC v. New York Life Ins. Co.,*
    403 N.W.2d 830 (1986) ........................................................................14

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) .................................................... 7, 8, 12

*Fieger v. Cox,*
    524 F.3d 770 (6th Cir. 2008) ...............................................................13

*Force v. Facebook, Inc.,*
    934 F.3d 53 (2d Cir. 2019) ...................................................................10

*Fremont Reorganizing Corp.,*
    811 F. Supp. 2d 1323 (E.D. MI. 2011) ................................................13

*FTC v. LeadClick Media, LLC,*
    838 F.3d 158 (2nd Cir. 2016) .................................................................9

*Gill v. Locricchio,*
    2006 WL 891463 (E.D. Mich. Mar. 30, 2006) .....................................15

*Haymore v. Amazon.com, Inc.,*
    No. 2:24-CV-729 TLN-SCR, 2024 WL 4825253 (E.D. Cal. Nov. 19, 2024) ......10

*Henderson v. Source for Pub. Data, L.P.,*
    53 F.4th 110 (4th Cir. 2022) ...................................................................9

*Henry v. Dow Chem. Co.,*
    701 N.W.2d 684 (Mich. 2005) ..............................................................16

*Igbonwa v. Facebook, Inc.,*
    No. 18-CV-02027-JCS, 2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) ................11

*Jane Doe No. 1 v. Backpage.com, LLC,*
    817 F.3d 12 (1st Cir. 2016) ...................................................................10

*Jones v. Dirty World Ent. Recordings, LLC,*
    755 F.3d 398, 406 (6th Cir. 2014) ............................................ 7, 8, 9, 12

*Klayman v. Zuckerberg,*
    910 F. Supp. 2d 314 (D.D.C. 2012) ......................................................11

*Knight Indus. & Assocs., Inc. v. Euro Herramientas,*
  *S.A.U.*, No. 2:12-CV-14405, 2013 WL 3773373 (E.D. Mich. July 17, 2013).....13

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
  925 F.3d 1263 (D.C. Cir. 2019) ...........................................................10

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009)................................................. 7, 8, 12

*Norris v. Lincoln Park Police Officers*,
  808 N.W.2d 578 (Mich. Ct. App. 2011) ..............................................15

*O'Kroley v. Fastcase, Inc.*,
  831 F.3d 352 (6th Cir. 2016) ...............................................................9

*PatentWizard, Inc. v. Kinko's, Inc.*,
  163 F. Supp. 2d 1069 (D.S.D. 2001) ..................................................11

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007)...............................................................7

*Poly-Flex Const., Inc. v. Neyer, Tiseo & Hindo, Ltd.*,
  600 F. Supp. 2d 897 (W.D. Mich. 2009) ............................................16

*Sam Han v. University of Dayton*,
  541 F. App'x 622 (6th Cir. 2013).........................................................12

*Teel v. Meredith*, 774 N.W.2d 527 (Mich. Ct. App. 2009)......................................15

*Wiener v. Miller*,
  No. 22-CV-7081 (GRB)(ARL), 2023 WL 6385816 (E.D.N.Y. Sept. 29, 2023)..10

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ................................................................9

**Statutes**

18 U.S.C. §§ 2701–12.....................................................................5

47 U.S.C. § 230 ................................................ 2, 7, 8, 9, 11, 12, 13, 14

**Rules**

Cal. Civ. Proc. Code § 2025.480.................................................................................16

Fed. R. Civ. P. 12(b)(6) ........................................................................................3, 12

Defendant Tea Dating Advice, Inc. ("Tea") respectfully submits this brief in support of its motion to dismiss Plaintiff Soha Elsayed ("Plaintiff")'s First Amended Complaint (the "Complaint" or the "FAC").

## I.     INTRODUCTION

Tea operates a mobile application (the "Tea App") with the mission of revolutionizing online dating by equipping women with the tools, real-time insights, and community to navigate the modern dating world. Its users may sign up for the Tea App using their Facebook, Apple or Google Play login and then choose a social media handle for identification in the Tea App.  One of the Tea App's key features is a social media style anonymous forum where its users can exchange feedback on potential partners and more broadly share experiences regarding relationships.

Plaintiff's claims arise from anonymous Tea App user(s) accusing her of authoring a post about other women.  Although she does not allege that the post remained online, in July 2025, she filed this lawsuit against John Doe[1] and later issued an invalid, out-of-state, third-party subpoena to Tea seeking a wide array of information about numerous posts and users.  Tea objected to the subpoena and Plaintiff did not fix its deficiencies or move to compel.  Instead, Plaintiff amended her complaint to assert claims against Tea for (1) civil conspiracy (2) negligence, (3)

---

[1] The Tea App is only available to women users.

1

declaratory and injunctive relief, and (4) attorneys' fees, costs, and punitive damages. Each of Plaintiff's claims against Tea should be dismissed with prejudice.[2]

Fundamentally, Plaintiff's claims are squarely foreclosed by Section 230 of the Communications Decency Act ("Section 230"), codified as 47 U.S.C. § 230. As Plaintiff admits, her claims arise from the publication of third-party statements by anonymous user(s) about Plaintiff on the Tea App. Section 230 immunizes interactive computer service providers like Tea from claims arising from content written and published on their platform by third parties. Such immunity is broad and express, precluding Plaintiff's claims against Tea and requiring dismissal.

Plaintiff's claims should also be dismissed with prejudice for numerous additional reasons fatal to her claims. Plaintiff's civil conspiracy claim should be dismissed with prejudice because she did not (and cannot) allege that Tea entered an agreement with John Doe. Her negligence claim should be dismissed with prejudice because Plaintiff does not allege Tea owes her an actionable duty. The claim is, in substance, a spoliation claim that Michigan does not recognize or an improper motion to compel. Finally, declaratory and injunctive relief, attorneys' fees, costs, and punitive damages are remedies, not causes of action.

---

[2] While Plaintiff's First Amended Complaint originally asserted three additional claims against Tea—namely, aiding and abetting defamation, tortious interference with a prospective civil action, and spoliation/concealment of evidence (*see* ECF No. 1, FAC)—Plaintiff voluntarily dismissed these claims by stipulation on October 31, 2025. (*See* Stipulation submitted on Oct. 31, 2025.)

For these reasons, discussed in more detail below, Plaintiff's claims against Tea should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

Tea operates a mobile application that allows women to share and crowdsource information about men they have dated or are considering dating (the "Tea App").  (*See* ECF No. 1, FAC ¶ 3, PageID17.)[3]  Plaintiff, Soha Elsayed, is purportedly a resident of Wayne County, Michigan.  (*Id.* ¶ 1, PageID15.)  Plaintiff alleges that her claims "arise[] from" a series of posts made by "anonymous users" on the Tea App.  (*Id.* ¶ 5, PageID17.)  She claims that, on or about July 2025, one or more anonymous Tea App users posted a picture of four women and alleged that those women engage in intercourse with married men for money.  (*Id.* ¶¶ 11-12, PageID 21.)  *Plaintiff does not claim that she is one of the women pictured or that the post referenced her*.  Rather, she alleges that another anonymous user ("John Doe") posted a picture of Plaintiff (the "Post") and claimed that she "was the individual responsible for the initial defamatory post . . . and/or that Plaintiff engaged

---

[3] All facts contained herein are taken from the FAC dated September 18, 2025 and are accepted as true only for purposes of Fed. R. Civ. P. 12(b)(6) and only to the extent this Court deems them to be well-pleaded factual allegations.  Tea reserves all rights as to the veracity of the factual allegations.

in the alleged misconduct." (*Id*. ¶ 13, PageID21.)  Plaintiff *does not allege that the Post remains online*.  (*See generally id*.)

On July 17, 2025, Plaintiff sued John Doe, the purported author of the Post for false light invasion of privacy and intentional infliction of emotional distress. (ECF No. 1, Compl. ¶ 14-22, PageID47.)  In her FAC, Plaintiff alleges that, after Plaintiff sued John Doe, her attorney "sent" Tea a "subpoena" "laying out the narrow categories of non-content identifiers sought from the Subject Accounts" on July 17, 2025.  (ECF No.1, FAC ¶ 17, PageID23.)

Plaintiff does not allege that her attorney served the subpoena on Tea.  (*Id*.) The subpoena, which is described in (*see, e.g.*, *id*. ¶ 17) and incorporated into the Complaint by reference, *see, e.g., Com. Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335-336 (6th Cir. 2007) ("when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment") was a Michigan subpoena improperly issued to Tea's registered agent in California.  (MI Subpoena, Ex. A.)[4] And, contrary to Plaintiff's allegations, it was not limited to "non-content identifiers."  (ECF No. 1, FAC ¶ 6, PageID19.)  For example, Plaintiff's subpoena

---

[4] True and accurate copies of the Michigan subpoenas are attached as **Exhibit A**.

4

sought "[a]ll stored direct messages sent or received by these users during the relevant time period." (MI Sub., Ex. A.)

Plaintiff alleges that a Tea representative, who she concedes may not have been a lawyer, responded: "Hi Daniel – we will provide the requested documentation within the next week."   (ECF No. 1, FAC ¶ 18, PageID23.)

Following this communication, Tea's counsel requested from Plaintiff's counsel issuance of a valid subpoena, and on September 9, 2025, Tea timely served responses and objections which are described in (*id.* ¶ 8, PageID19.) and incorporated into the Complaint by reference, to a second subpoena purportedly issued from Los Angeles, California by Plaintiff's counsel. (*Id.* ¶ 8, PageID19.) Tea objected on numerous procedural and substantive grounds, including that the subpoena sought message contents in violation of the Stored Communications Act (18 U.S.C. §§ 2701–12) and user identities in violation of the First Amendment. (Resp., Ex B.)[5] Tea identified several additional deficiencies, including that the subpoena was issued by the wrong court, purported to require production outside California, and improperly identified Plaintiff's counsel (a Michigan lawyer) as the deposition officer.  (*Id.*)  Rather than try to fix the deficiencies, Plaintiff amended her complaint to add claims against Tea.

---

[5] True and accurate copies of Tea's Responses and Objections are attached as **Exhibit B**.

Plaintiff concedes that anonymous users, *not Tea*, are the "actual tortfeasors" (ECF No. 1, FAC ¶ 9, PageID19) and that she seeks to "hold Tea responsible for its role in enabling and shielding the publication of defamatory material" (*id*. ¶ 10, PageID21).  Despite acknowledging the anonymity associated with Tea App users, Plaintiff alleges, on information and belief, that Tea has "IP addresses, device identifiers, internal account IDs, subscriber contact and billing information" (*id*. ¶ 29, PageID27) that she claims without support would identify John Doe.[6]  She does not allege that Tea contributed to or otherwise altered either post.  (*See generally id*.) Plaintiff does not allege that her attorney requested that Tea take down any post, that Tea refused to take down any post, or that any post related to Plaintiff's claim was still online when her attorney contacted Tea.  (*See generally id*.)

## III.   <u>ARGUMENT</u>

### A. Section 230 Bars All of Plaintiff's Claims Against Tea.

Plaintiff's claims against Tea are barred by the Section 230 immunity expressly provided to interactive computer service providers running platforms like the Tea App because, as Plaintiff concedes, her "case arises from . . . online defamation hosted on the Tea App" and "the defamatory postings were created and

---

[6] Contrary to Plaintiff's assertion, an IP address identifies a router, not a server.  For example, if a user is sitting in a Starbucks on the public wifi at the time she downloads the Tea App, or posts, the IP address associated with that account would be that of the Starbucks, not the individual user.

published by anonymous user accounts on Tea's platform." (*See* ECF No. 1*.*, FAC ¶ 5, PageID17.) Section 230 provides broad protections for owners and operators of websites and Apps, shielding them from being treated as a publisher of content posted by their users. Under Section 230, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* at § 230(e)(3).

Section 230 "immunizes providers of interactive computer services against liability arising from content created by third parties." *Jones v. Dirty World Ent. Recordings, LLC*, 755 F.3d 398, 406 (6th Cir. 2014); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (Section 230 prohibits "state-law plaintiffs from holding interactive computer service providers legally responsible for information created and developed by third parties").

Courts construe "the immunity provisions in § 230 broadly" and "close cases . . . must be resolved in favor of immunity . . . ." *Jones*, 755 F.3d at 408 (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,* 521 F.3d 1157, 1174 (9th Cir. 2008)); *Nemet Chevrolet*, 591 F.3d at 254 ("To further the policies underlying the CDA, courts have generally accorded § 230 immunity a broad scope"); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007)

("[t]he majority of federal circuits have interpreted the CDA to establish broad federal immunity . . . .") (quotation marks and citation omitted).

Decisions concerning immunity "should be resolved at an earlier stage of litigation." *Jones*, 755 F.3d at 417; *see also Nemet Chevrolet*, 591 F.3d at 255 ("We thus aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'" (quoting *Roommates*, 521 F.3d at 1175)).

This case should easily be dismissed at the pleading stage pursuant to Section 230 because (1) Tea is a "provider . . . of an interactive computer service" and (2) Plaintiff's claims seek to "treat[] [it] as the publisher or speaker" (3) of "information provided by another information content provider." 47 U.S.C. § 230(c)(1); *see also Jones*, 755 F.3d at 409.

### i. Tea is an Interactive Computer Service Provider.

Tea is an interactive computer service provider because it operates a website and application "that provides or enables computer access by multiple users to a computer server . . ." 47 U.S.C. § 230(f)(2). As Plaintiff acknowledges, Tea operates a social media site where users post content. (*See* ECF No. 1, FAC ¶ 3, PageID17.) Therefore, Tea, like other social media websites and apps, is an interactive computer service provider. *See Jones*, 755 F.3d at 406 n.2 (interactive

computer service includes "website operators"); *see also Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 120 n.10 (4th Cir. 2022) ("Hosting a website 'enables computer access by multiple users to a computer server'" and "online message boards . . . fall within this definition" (quoting *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2nd Cir. 2016))).

      ii.    <u>Plaintiff's Claims Seek to Treat Tea as a Publisher.</u>

Plaintiff's claims treat Tea as a publisher because, however styled, they rest on Tea allegedly publishing users' statements about Plaintiff.  Plaintiff concedes that her claims arise from anonymous users' posts on the Tea App (ECF No. 1, FAC ¶ 5, PageID17), that anonymous user(s) are the "actual tortfeasors" (*id*. ¶ 9, PageID19) and that that she seeks to "hold Tea responsible for its role in enabling and shielding the publication of defamatory material" (*id*. ¶ 10, PageID21).

Decisions about what information to publish, postpone, or remove are "traditional editorial functions" at the "core" of Section 230's protections.  *Jones*, 755 F.3d at 407 ("At its core, § 230 bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'" (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997))); *see also O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016) ("Google thus cannot be held liable

9

for these claims—for merely providing access to, and reproducing, the allegedly defamatory text.").

Courts "uniformly recognize" that Section 230 protects interactive computer service providers against "causes of action of all kinds" that arise from publishing third-party content. *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1267 (D.C. Cir. 2019); *see also Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016) ("courts have invoked the prophylaxis of section 230(c)(1) in connection with a wide variety of causes of action, including housing discrimination, negligence, and securities fraud and cyberstalking") (internal citations omitted). Section 230 immunity is "implicated not only by claims that explicitly point to third party content but also by claims which, though artfully pleaded to avoid direct reference, implicitly require recourse to that content to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party [c]ommunications." *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017), *aff'd in part, dismissed in part sub nom. Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019); *Haymore v. Amazon.com, Inc.*, No. 2:24-CV-729 TLN-SCR, 2024 WL 4825253, at *4 (E.D. Cal. Nov. 19, 2024), *report and recommendation adopted*, No. 2:24-CV-00729-TLN-SCR, 2025 WL 565499 (E.D. Cal. Feb. 20, 2025) (same); *Wiener v. Miller*, No. 22-CV-7081 (GRB)(ARL), 2023 WL 6385816, at *4 (E.D.N.Y. Sept. 29, 2023) ("Simply put, but for the publication of the Miller's listing, the

10

plaintiffs would not have suffered the harm they allege. In that regard, the label affixed to these claims is immaterial.") (footnote omitted); *Igbonwa v. Facebook, Inc.*, No. 18-CV-02027-JCS, 2018 WL 4907632, at *6 (N.D. Cal. Oct. 9, 2018), *aff'd*, 786 F. App'x 104 (9th Cir. 2019) (Section 230 "covers not only claims that are based on conduct that is directly related to the publication or removal or content but also on claims where causation depends on the content itself."). The FAC is a perfect example of the artful pleading courts routinely reject. As Plaintiff concedes, her claims "arise[] from" a series of posts made by "anonymous user accounts" on the Tea App. (ECF No. 1, FAC ¶ 5, PageID17.) Regardless of how Plaintiff labels her causes of action, Section 230 bars her claims against Tea because she seeks to treat Tea as a publisher of third-party content.[7]

### iii.   The Posts Were Written by Third Parties.

Tea is not a content provider because it did not write the posts/comments at issue. As Plaintiff concedes, anonymous users, not Tea, made the comments at issue. (*See e.g.*, ECF No. 1, FAC ¶ 5, PageID17 ("The defamatory postings were created and published by anonymous user accounts"); (¶ 9, PageID19 anonymous posters

---

[7] *See Klayman v. Zuckerberg*, 910 F. Supp. 2d 314, 319-21 (D.D.C. 2012), *aff'd*, 753 F.3d 1354 (D.C. Cir. 2014) (negligence claims against social media company barred by Section 230); *PatentWizard, Inc. v. Kinko's, Inc.*, 163 F. Supp. 2d 1069, 1071-72 (D.S.D. 2001) (claims of spoliation of evidence, aiding and abetting defamation, and tortious interference barred by Section 230); *Brikman v. Twitter, Inc.*, No. 19-cv-5143 (RPK) (CLP), 2020 WL 5594637, at *3 (E.D.N.Y. Sept. 17, 2020) (aiding and abetting defamation claim barred by Section 230).

are the "actual tortfeasors").)  Since the Tea App merely passively displays content created by third parties, it is not a content provider. *See Jones,* 755 F.3d at 412 (defendant "not responsible, in whole or in part, for the development of this content, which comes entirely from subscribers and is passively displayed by" them (quoting *Roommates,* 521 F.3d at 1173-74))); *see also Nemet Chevrolet,* 591 F.3d at 257 (structuring and designing a website is not the development of content).

### B. Plaintiff Likewise Fails to State Any Claim Against Tea.

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court need not accept as true "inferences [that] are unsupported by the facts alleged in the complaint," *Sam Han v. University of Dayton*, 541 F. App'x 622, 627 (6th Cir. 2013), or "legal conclusions masquerading as factual allegations," *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### i.    Plaintiff's Civil Conspiracy Claim Should Be Dismissed With Prejudice.

Plaintiff's civil conspiracy claim (Count III) should be dismissed with prejudice because she does not (and cannot) plausibly allege that Tea agreed with

the "actual tortfeasors" (ECF No. 1, FAC ¶ 9, PageID19) to defame her or shield the identity of John Doe from Plaintiff. Plaintiff must allege an "intentional agreement" between Tea and John Doe. *Fremont Reorganizing Corp.*, 811 F. Supp. 2d 1323, 1341 (E.D. MI. 2011) (civil conspiracy claim "requires proof of an intentional agreement"); *see also Knight Indus. & Assocs., Inc. v. Euro Herramientas, S.A.U.*, No. 2:12-CV-14405, 2013 WL 3773373, at *5 (E.D. Mich. July 17, 2013) (civil conspiracy claim "requires proof of an agreement to achieve the objective of the conspiracy"). These pleading requirements are "relatively strict" and "some degree of specificity" is required. *Fremont Reorganizing Corp.*, 811 F. Supp. 2d at 1341; *see also Knight*, 2013 WL 3773373, at *5 ("Indeed 'pleading requirements governing civil conspiracies are relatively strict.'" (quoting *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008))). But Plaintiff fails to allege that Tea entered an agreement with John Doe *or even communicated* with her. (*See generally* ECF No. 1, FAC.) Indeed, she does not even allege that Tea kept the post online. Instead, Plaintiff merely alleges that "Tea and JOHN DOE, by words and conduct, formed an agreement, combination, or understanding . . . to obscure, conceal, and shield the identity of the persons posting false and defamatory statements about Plaintiff." (*See id*. ¶ 43, PageID31.) This conclusory allegation is not sufficient to plead the existence of an agreement and should be ignored. *See, e.g.*, *D'Ambrosio*, 747 F.3d at 383 (court should disregard "legal conclusions masquerading as factual

13

allegations"). Since Plaintiff cannot allege an agreement, the Court should dismiss this claim with prejudice.

Plaintiff similarly does not (and cannot) allege an actionable underlying tort. As Michigan courts have repeatedly recognized, "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580, (2003), *aff'd,* 472 Mich. 91 (2005) (quoting *Early Detection Center, PC v. New York Life Ins. Co.,* 403 N.W.2d 830, 836 (1986)) (internal quotation marks omitted). Since objecting to an invalid subpoena is not an actionable tort, this claim should be dismissed. *See Auto Club*, 670 N.W.2d at 580 ("Because plaintiffs failed to establish any actionable underlying tort, the conspiracy claim must also fail.").

ii.   Plaintiff's Negligence Claim Should Be Dismissed With Prejudice.

The Court should dismiss Plaintiff's "negligence" claim (Count V) because Plaintiff fails to plead a requisite duty, breach and damages. Plaintiff accuses Tea of "failing to preserve and produce relevant non-content identifiers, by making false or misleading representations regarding account existence, and by unreasonably delaying production . . . ." (ECF No. 1, FAC ¶ 53, PageID35.) These allegations do not outline a claim for negligence and nothing pled by Plaintiff creates a duty between Plaintiff and Tea. At best it is a claim for spoliation, which Michigan does not recognize—a fact Plaintiff acknowledged in dismissing Count VI of her FAC.

14

*See Buffman v. United States*, No. 13-CV-14024, 2017 WL 1228472, at *4 (E.D.

Mich. Apr. 4, 2017) ("the Court is not bound by the 'party's choice of label' because

that would 'exalt form over substance' and allow a party to 'avoid the dismissal of a

cause of action through artful pleading.'" (quoting *Norris v. Lincoln Park Police*

*Officers*, 808 N.W.2d 578, 584 (Mich. Ct. App. 2011))); *Teel v. Meredith*, 774

N.W.2d 527, 529 (Mich. Ct. App. 2009) (affirming dismissal of claim for "spoliation

of evidence that interferes with a civil action against a third-party" because

"[a]lthough plaintiff now invites this Court to legally recognize the cause of action…

we decline to do so."); *see also Gill v. Locricchio*, 2006 WL 891463, at *5 (E.D.

Mich. Mar. 30, 2006) ("Michigan does not recognized spoliation as a cause of

action."); *Calvin v. Gen. Motors Corp.*, No. 190558, 1997 WL 33340259, at *3

(Mich. Ct. App. Nov. 4, 1997) (affirming dismissal of "tortious interference with

prospective civil litigation" claim because that "count is essentially a claim of

spoliation" and that claim "has not been recognized in Michigan"); *Appalachian*

*Railcar Servs., Inc. v. Boatright Enters., Inc.*, 602 F. Supp. 2d 829, 864-866 (W.D.

Mich. 2008) ("Michigan law does not recognize a cause of action for spoliation of

evidence" or a cause of action for "intentional interference with a prospective civil

action by spoliation of evidence").  Similarly, Tea had no duty to produce documents

in response to an invalid subpoena and it did not breach any duty by objecting to it.

Indeed, if Plaintiff disagreed with Tea's objections, she could have filed a motion to

compel in California. *See* Cal. Civ. Proc. Code § 2025.480 (stating requirements for filing motion to compel). However, whether an ill-pled motion to compel or spoliation claim, these allegations cannot be the basis for a negligence claim.

In addition to a lack of duty, Plaintiff's negligence claim should also be dismissed because Tea's actions did not cause her alleged damages. *Doe v. Henry Ford Health Sys.*, 865 N.W.2d 915, 921 (Mich. Ct. App. 2014) ("[I]n a negligence action, plaintiffs must show 'duty, breach of that duty, causation, and damages.'" (quoting *Henry v. Dow Chem. Co.,* 701 N.W.2d 684, 688 (Mich. 2005))). Under Michigan law, "the injury complained of in a negligence action must be an actual, present injury." *Henry Ford*, 865 N.W.2d at 921. Plaintiff does not (and cannot) point to any concrete damages, and instead alleges that Tea caused her "increased damages, including additional reputational injury, emotional distress, business losses, and attorney fees." (ECF No. 1, FAC ¶ 54, PageID35.) These vague categories are not sufficient but, even if they were, Tea could not have caused Plaintiff reputational injury, emotional distress or business losses because *she does not allege that the Post even remained online after her attorney contacted Tea*. (*See generally id*.) Similarly, even if Plaintiff incurred attorneys' fees, they are not recoverable in negligence claims. *See, e.g., Poly-Flex Const., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 600 F. Supp. 2d 897, 907 (W.D. Mich. 2009) ("Michigan follows the American Rule, which states that attorneys' fees are not recoverable as costs or

damages unless expressly allowed by statute, court rule, contract, or a common-law exception provides to the contrary.").

The Court should dismiss Plaintiff's negligence claim with prejudice because it is improper and Plaintiff cannot allege damages.

                iii.    <u>Plaintiff's Claims for Declaratory and Injunctive Relief Should be Disregarded.</u>

The Court should ignore Plaintiff's cause of action for declaratory and injunctive relief (Count VII) because they are not causes of action. *See, e.g., Cruz v. Cap. One, N.A.*, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016) ("It is plain that counts 4 and 5 do not state actual claims for relief, because declaratory and injunctive relief are remedies, not causes of action."). While listing every deficiency would not be feasible, Plaintiff clearly cannot use a cause of action in her Complaint to enforce an invalid third-party subpoena against a company that she has now sued.

                iv.    <u>Plaintiff's Claim for Attorneys' Fees, Costs, and Punitive Damages are Similarly Improper.</u>

Similarly, Plaintiff's claim for attorneys' fees, costs, and punitive damages (Count VIII) is equally meritless. These are potential remedies, not independent causes of action, and Plaintiff is not entitled to any of them because her claims lack merit and should be dismissed. Moreover, as explained above, attorneys' fees are not recoverable as damages.

IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff's claims against Tea should be dismissed with prejudice.

Respectfully submitted,

Dated: November 3, 2025         */s/ Katherine L. Pullen*
                                Katherine L. Pullen (P74511)
                                Amber J. Krupp (P88317)
                                WARNER NORCROSS + JUDD LLP
                                2715 Woodward Avenue, Suite 300
                                Detroit, Michigan 48201
                                (313) 546-6000
                                kpullen@wnj.com
                                akrupp@wnj.com

## <u>BRIEF CERTIFICATION FORM</u>

I, Katherine L. Pullen, certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1, and Judge White's Case Management Requirements, including the following (click each box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are filed in searchable PDF format, *see* Case Management Requirements § III.A;

☒ except for footnotes and necessary block quotes, the brief is double spaced (<u>not</u> "Exactly 28 pt" spaced) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety (<u>not</u> in minuscript), *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, I will mail to chambers a courtesy copy with ECF headers, *see* Case Management Requirements § III.B.


I also acknowledge that my brief will be stricken from the docket if the Court later finds that these requirements are not met.


/s/ *Katherine L. Pullen*
Katherine L. Pullen
Attorney for Defendant Tea Dating Advice Inc.

19

## **<u>PROOF OF SERVICE</u>**

Katherine L. Pullen states that on November 3, 2025, she caused the foregoing

document to be served on Plaintiff's counsel by email to dmakled@makledlaw.com

and first-class mail, postage prepaid, to the address set forth below:

> Daniel B. Makled
> DAN MAKLED LAW
> 23451 Ford Road
> Dearborn, Michigan 48128

Dated: November 3, 2025                 */s/ Katherine L. Pullen*
                                                         Katherine L. Pullen