IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOHA ELSAYED,

                    Plaintiff,

vs.

JOHN DOE, AN INDIVIDUAL
WHOSE TRUE IDENTITY IS
UKNOWN, AND TEA DATING
ADVICE, INC., A CORPORATION,

                    Defendants.

CASE NO. 2:25-CV-13321-RJWKGA

HON. ROBERT J. WHITE

## PLAINTIFF SOHA ELSAYED'S RESPONSE TO DEFENDANT TEA DATING ADVICE, INC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1

# I. STATEMENT OF ISSUES PRESENTED

1. Does Section 230 of the Communications Decency Act bar Plaintiff's claims where the claims challenge Tea Dating Advice Inc's own post notice conduct, including its voluntary promise to provide identifying information and its later concealment and failure to preserve that information, rather than its role as a publisher of third party content.

   **Plaintiff respectfully submits that it does not.**

2. Has Plaintiff adequately pled civil conspiracy by alleging coordinated actions between Tea Dating Advice Inc and the anonymous user after Tea was placed on notice, which were intended to conceal the user's identity and prevent Plaintiff from obtaining redress.

   **Plaintiff respectfully submits that she has.**

3. Has Plaintiff stated a valid negligence claim under Michigan law where Tea Dating Advice Inc voluntarily undertook to provide identifying information and failed to exercise reasonable care in doing so, thereby creating an independent duty of care recognized under Michigan law.

   **Plaintiff respectfully submits that she has.**

4. Are Plaintiff's requests for declaratory and injunctive relief proper as equitable remedies that flow from her surviving substantive claims and are directed at preventing further concealment or loss of identifying information.

   **Plaintiff respectfully submits that they are.**

5. Should Plaintiff's requests for attorney fees, costs, and punitive damages be understood as remedies rather than as independent causes of action and therefore remain available if her substantive claims proceed.

   **Plaintiff respectfully submits that they should.**

## II. STATEMENT OF CONTROLLING AUTHORITY

The principal controlling authority in this matter is Section 230 of the Communications Decency Act, 47 U.S.C. § 230. That statute provides limited immunity to online service providers for third party content but does not bar claims based on a provider's own independent conduct. Federal courts have consistently recognized that Section 230 does not extend to acts that occur after notice or that arise from duties outside the publisher role. See *Barnes v. Yahoo Inc.*, 570 F.3d 1096 (9th Cir. 2009); *Henderson v. Source for Public Data LP*, 53 F.4th 110 (4th Cir. 2022); *FTC v. LeadClick Media LLC*, 838 F.3d 158 (2d Cir. 2016); *Fair Housing Council of San Fernando Valley v. Roommates.com LLC*, 521 F.3d 1157 (9th Cir. 2008).

Michigan law governs Plaintiff's negligence and conspiracy claims. Under *Smith v. Allendale Mutual Insurance Co.*, 410 Mich. 685 (1981), a party that voluntarily undertakes to act assumes a duty to perform the undertaking with reasonable care. Civil conspiracy in Michigan requires a showing of an agreement, express or implied, to commit an unlawful act. *Admiral Insurance Co. v. Columbia Casualty Insurance Co.*, 194 Mich. App. 300 (1992). Requests for declaratory and injunctive relief are governed by the rule that such relief is remedial and ancillary to substantive claims. *Cruz v. Capital One N.A.*, 192 F. Supp. 3d 832 (E.D. Mich. 2016).

3

The Sixth Circuit has not extended Section 230 immunity to defendants whose own conduct after notice of harm constitutes independent wrongdoing. The early decision in *Zeran v. America Online Inc.*, 129 F.3d 327 (4th Cir. 1997), which Tea relies upon, addressed only a failure to remove third party content and does not control where, as here, the claims are based on post notice promises, concealment, and obstruction.

### III. PLAINTIFF'S COUNTER STATEMENT OF FACTS

Plaintiff Soha Elsayed brings this action to redress harm caused by an anonymous user of the Tea Dating Advice mobile application. Tea Dating Advice, Inc. ("Tea") owns and operates the application, which allows users to post anonymous statements about other individuals. On or about July 2025, one or more anonymous Tea users posted photographs and statements about Plaintiff that were false and damaging to her reputation. Plaintiff filed suit against the anonymous poster, identified in the pleadings as John Doe.

After the lawsuit was filed, Plaintiff's counsel contacted Tea and formally requested limited identifying information necessary to serve the anonymous tortfeasor. On July 17, 2025, Tea received a written subpoena and accompanying correspondence describing the narrow categories of non-content identifiers sought, including Internet Protocol addresses, device identifiers, and account information that would permit identification of the responsible user (**Exhibit A**). Later that same

day, Tea's representative responded by email stating, "Hi Daniel, we will provide the requested documentation within the next week" (**Exhibit B**). This statement constituted an express undertaking to preserve and produce the requested identifiers.

When no production was received, counsel followed up on July 31, 2025, by text message to Tea's representative "Christi," who responded, "Hi Mr. Makled, we will be sending responsive documents in the next few days. Thank you for your patience" (**Exhibit C**). Plaintiff reasonably relied on these representations and deferred further court action in anticipation of compliance.

On September 16, 2025, Tea's newly retained attorney, Cameron Friedman, sent an email stating that Tea "cannot locate any user with that username" and would not produce any information without a "proper subpoena" and additional showings (**Exhibit D**). In response, Plaintiff's counsel provided a screenshot of the post made under the username "MAGICQUEEN10," directly contradicting Tea's claim that no such account existed, and reiterated that Tea had already confirmed possession of the records weeks earlier (**Exhibit E**). Plaintiff's counsel warned that Tea's refusal to comply and shifting positions appeared to constitute concealment and obstruction of lawful discovery efforts.

That same day, Tea's counsel replied that Plaintiff had not served a "lawful subpoena," but confirmed that Tea had forwarded the screenshot "to the client to see if it assists in their search" (**Exhibit F**). After this exchange, Tea went silent and

produced nothing further. By that point, Plaintiff had reason to believe the relevant identifiers had been deleted, altered, or concealed. The screenshot of the original post under the username "MAGICQUEEN10" is attached as (**Exhibit G**).

The sequence of Tea's repeated assurances followed by noncompliance and silence forms the factual basis for this action.

Plaintiff thereafter amended her complaint to include Tea as a defendant, asserting claims for civil conspiracy, negligence, and related equitable relief. These claims do not arise from the content of any post but from Tea's own conduct after it was placed on notice of litigation. Plaintiff alleges that Tea's voluntary undertaking and subsequent refusal to act caused additional harm, including the loss of critical identifying evidence and continued reputational injury.

## IV. STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The plausibility standard "is not akin to a 'probability requirement,'" but it does require more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. At this stage, the Court does not weigh evidence, resolve factual disputes, or assess credibility; it simply determines whether the alleged facts, taken as true, plausibly give rise to an entitlement to relief. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

Because all factual allegations must be taken as true and all reasonable inferences drawn in the plaintiff's favor, dismissal is appropriate only if there is no plausible set of facts under which Plaintiff could obtain relief.

## V.  ARGUMENT

### A. Section 230 does not bar Plaintiff's claims against Tea

Section 230 protects an online service when the plaintiff seeks to treat the service as the publisher or speaker of information provided by another. 47 U.S.C. § 230(c)(1). It does not protect the service when the claim arises from duties that exist apart from publishing or from conduct that occurs after notice. Federal courts have made this clear. Claims based on a provider's own post-notice misconduct are not immunized. See *Henderson v. Source for Public Data LP*, 53 F.4th 110, 130–31 (4th Cir. 2022); *FTC v. LeadClick Media LLC*, 838 F.3d 158, 174 (2d Cir. 2016); *Fair*

*Housing Council of San Fernando Valley v. Roommates.com LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008).

Tea relies on decisions such as *Zeran v. America Online Inc.*, 129 F.3d 327 (4th Cir. 1997); *Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398 (6th Cir. 2014); *Nemet Chevrolet Ltd. v. Consumeraffairs.com Inc.*, 591 F.3d 250 (4th Cir. 2009); *Marshall's Locksmith Service Inc. v. Google LLC*, 925 F.3d 1263 (D.C. Cir. 2019); *Jane Doe No. 1 v. Backpage.com LLC*, 817 F.3d 12 (1st Cir. 2016); and *Cohen v. Facebook Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017). Every one of those cases involved a plaintiff who sought to hold a website liable for content posted by someone else or for failing to remove it.  None involved a platform that, after receiving a subpoena and explicit notice of litigation, twice promised to provide identifying information, first on July 17, 2025, and again on July 31, 2025, and then reversed course after retaining counsel. That distinction matters.

Tea also argues that because it operates an interactive computer service, the analysis ends. Plaintiff does not dispute that Tea runs such a service. But even for a qualifying provider, the statute still asks whether the plaintiff is attempting to treat the service as a publisher. 47 U.S.C. § 230(c)(1). Here she is not. She is treating Tea as a party that voluntarily undertook to provide identifying records and then failed to act with reasonable care after making that commitment.

As the Fourth Circuit explained in *Henderson*, Section 230(c)(1) "is not a license to do whatever one wants online" and applies only when a claim seeks to hold a defendant liable "as the publisher or speaker" of third-party content. 53 F.4th at 117–18, 130. Here, Plaintiff's allegations target conduct that falls wholly outside the publisher role, and thus outside Section 230 immunity.

The Ninth Circuit reached the same conclusion in *Barnes v. Yahoo Inc.*, 570 F.3d 1096 (9th Cir. 2009). There, the plaintiff alleged that Yahoo failed to remove harmful third-party content but also that it expressly promised to do so after notice. The court held that Section 230 barred claims seeking to treat Yahoo as a publisher but not those arising from Yahoo's independent promise to act. The duty in such a claim, the court explained, "would come not from Yahoo's publishing conduct, but from its manifest intention to be legally obligated to do something." *Id.* at 1107. The same distinction applies here. Plaintiff's claims arise not from Tea's role as a publisher but from its post-notice assurances that it would provide the requested documentation and its subsequent failure to do so. Those promises and omissions created an independent duty, separate from any editorial or publishing function, and therefore fall outside the scope of Section 230 immunity.

After Tea's counsel later claimed no such account existed and Tea ceased communicating altogether, Plaintiff had reason to believe the requested identifiers had been deleted or concealed. That sequence of express undertaking, confirmation

of possession, and subsequent silence constitutes Tea's own misconduct, not a publishing decision, and places this case squarely within the reasoning of *Barnes* and *Henderson*.

### B. Plaintiff has stated claims against Tea

Tea's remaining arguments depend on mischaracterizing what Plaintiff has actually pled. Plaintiff has not pled a stand-alone spoliation claim. She pled that Tea voluntarily undertook to act and then failed to exercise reasonable care, which is a recognized Michigan theory of liability.

### i. Civil conspiracy

Tea contends that Count III fails because there is no agreement and no underlying tort. At the pleading stage, Plaintiff is not required to produce direct evidence of an agreement, particularly where relevant communications are in the defendant's possession. Michigan allows a conspiracy to be proven through circumstantial evidence and reasonable inference. See *Admiral Insurance Co. v. Columbia Casualty Insurance Co.*, 194 Mich. App. 300, 313 (1992). The First Amended Complaint alleges that Tea was notified of the lawsuit, initially agreed to cooperate, later reversed its position and denied the account's existence, and that the net effect was to shield the anonymous poster. Those facts are sufficient to permit an inference of concerted action.

Tea further argues there is no underlying tort because objecting to a subpoena is not actionable. But Plaintiff is not suing because Tea filed an objection. She is suing because Tea promised to provide the information, then refused and concealed it, thereby frustrating her ability to proceed against the anonymous poster. That is wrongful conduct that can serve as the underlying act. See *Early Detection Center P.C. v. New York Life Insurance Co.*, 157 Mich. App. 618, 631 (1986).

Tea cites *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323 (E.D. Mich. 2011); *Knight Industries and Associates Inc. v. Euro Herramientas S.A.U.*, 2013 WL 3773373 (E.D. Mich. July 17, 2013); and *Fieger v. Cox*, 524 F.3d 770 (6th Cir. 2008) for strict pleading rules. Those decisions merely hold that a conspiracy claim cannot be conclusory. Here the claim is detailed: it sets out a clear chronology, identifies the communications, and describes the coordinated outcome.

At a minimum, if the Court finds any perceived pleading gap, the proper remedy is leave to amend, as Tea alone controls the internal communications that would provide further detail.

### ii. Negligence

Tea next argues that Count V is really a spoliation claim and that Michigan does not recognize such a cause of action. Plaintiff agrees that Michigan does not have a separate tort of spoliation. That is why she stipulated to dismiss the earlier

spoliation count. But Count V is not a spoliation claim. It is a negligent undertaking claim.

Michigan law is clear that when a party voluntarily undertakes to act for another, it assumes a duty to perform that undertaking with reasonable care. See *Smith v. Allendale Mutual Insurance Co.*, 410 Mich. 685, 714 (1981). Tea's written statement that "we will provide the requested documentation within the next week" was an express undertaking. That assurance came after Tea had been served with a subpoena and was on notice of active litigation. It was plainly foreseeable that Plaintiff would rely on that assurance and that harm would result if Tea failed to follow through. When Tea later reversed course, denied the existence of the account, and allowed the identifying information to become unavailable, it breached the duty it had assumed.

Tea argues that no duty existed because the subpoena was allegedly invalid. But the duty here does not arise from the subpoena's technical form. It arises from Tea's own promise to act and its exclusive possession of the identifying information. Even if Tea had objections to the subpoena, it could not in the meantime destroy, conceal, or withhold the very data it had promised to produce.

Even accepting Tea's argument that the subpoena was somehow procedurally defective, that objection is beside the point. Tea's own communications confirm that it possessed the identifying information when it promised to produce it, and later

claimed that no such account existed. Those two positions cannot both be true. If Tea truly lacked responsive data, the validity of the subpoena would have been irrelevant. And if Tea had the data when it said "we will provide the requested documentation within the next week," then its later denial raises an inference of concealment or destruction. Either way, the harm to Plaintiff arises from Tea's own inconsistent and obstructive conduct, not from any technical defect in service.

The law does not permit a party to undertake an obligation, invite reliance, and then erase the evidence that obligation concerned.

Tea's causation and damages arguments also fail at this stage. Plaintiff has alleged that Tea's refusal to preserve and produce the identifiers prevented her from identifying and serving the anonymous tortfeasor, resulting in continued reputational and emotional harm. That is a present injury under Michigan law. Michigan requires only a present, non-speculative injury, not a detailed itemization of damages in a pleading. See *Henry v. Dow Chemical Co.*, 701 N.W.2d 684, 688 (Mich. 2005); see also *Doe v. Henry Ford Health System*, 865 N.W.2d 915, 921 (Mich. Ct. App. 2014).

Tea's reliance on Michigan's rejection of an independent tort for spoliation is misplaced. *Teel v. Meredith*, 774 N.W.2d 527 (Mich. Ct. App. 2009); *Gill v. Locricchio*, 2006 WL 891463 (E.D. Mich. Mar. 30, 2006); *Calvin v. General Motors Corp.*, 1997 WL 33340259 (Mich. Ct. App. Nov. 4, 1997); and *Appalachian Railcar Services Inc. v. Boatright Enterprises Inc.*, 602 F. Supp. 2d 829 (W.D. Mich. 2008)

13

each addressed efforts to create a new tort for destruction of evidence. Plaintiff is not seeking to create such a tort. She is applying the established negligent undertaking doctrine to a specific and voluntary promise Tea made during ongoing litigation. Tea has cited no Michigan authority allowing a party to expressly promise to provide evidence and then renege without consequence.

Tea also suggests that Plaintiff should have filed a motion to compel in California. That argument is a procedural distraction, not a Rule 12 defense. Plaintiff's claim arises from Tea's own conduct, its promises, its subsequent refusal, and its concealment, not from any procedural dispute over discovery. Those allegations state a valid claim for negligence under Michigan law.

### iii. Declaratory and injunctive relief

Tea cites *Cruz v. Capital One N.A.*, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016) to argue that declaratory and injunctive relief are not independent causes of action. Plaintiff agrees that they are remedies, not standalone claims. They are pleaded to ensure that, if Plaintiff prevails, the Court can order Tea to preserve and produce any identifying information that still exists and to refrain from further concealment or deletion. Such equitable relief is appropriate where the defendant alone controls the relevant data and where monetary damages alone would not prevent continued harm.

**iv. Attorneys fees, costs, and punitive damages**

Plaintiff agrees that these are remedies, not independent causes of action. They are included to preserve the issues for consideration at the appropriate stage.

**C. Rule 12 requires the Court to accept Plaintiff's version of events**

Tea asks the Court to adopt its own version of events concerning the subpoenas, what its representative meant, and what an Internet Protocol address can reveal. On a motion to dismiss, the Court does not weigh competing narratives. The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff has pleaded a clear sequence of notice, express assurances, refusal, and resulting harm. At this stage, those allegations must be accepted as true. They are more than sufficient to state plausible claims and to defeat Tea's motion to dismiss.

**VI. CONCLUSION**

Tea's motion to dismiss rests on a false premise. Plaintiff is not seeking to hold Tea liable for statements made by anonymous users. She seeks to hold Tea accountable for its own conduct after being placed on notice of litigation, including its voluntary undertaking to provide identifying information, its failure to do so, and

15

its concealment of the data necessary to identify the anonymous tortfeasor. Section 230 provides no immunity for such acts.

Plaintiff has plausibly alleged that Tea assumed and breached an independent duty, acted in concert with the anonymous poster to obstruct her ability to proceed, and caused concrete harm by preventing her from identifying and serving the responsible party. At this stage, all factual allegations must be accepted as true and all reasonable inferences drawn in Plaintiff's favor.

For these reasons, Plaintiff respectfully requests that the Court deny Defendant Tea Dating Advice Inc.'s motion to dismiss in its entirety and permit this case to proceed on the merits.

Respectfully submitted,

s/ Daniel B. Makled
Daniel B. Makled (P78777)
DAN MAKLED LAW
23451 Ford Rd
Dearborn, MI 48128
Telephone: (313) 744-4878
Facsimile: (313) 447-3860
Email: dmakled@makledlaw.com

Attorney for Plaintiff,
Soha Elsayed

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was sent via U.S. mail and/or via

email, this 13th day of November, 2025, to the following:

Katherine L. Pullen (P74511)
WARNER NORCROSS + JUDD
2715 Woodward Avenue, Suite 300
Detroit, Michigan 48201
(313) 546-6000
kpullen@wnj.com

*Attorney for Defendant,*
*Tea Dating Advice, Inc.*

17