# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| SOHA ELSAYED, | Case No. 2:25-cv-13321-RJW-KGA |
| Plaintiff, | Hon. Robert J. White |
| v. | Magistrate Judge Kimberly G. Altman |
| JOHN DOE, an individual whose true identity is unknown; and TEA DATING ADVICE, INC., a corporation, | Removed from Wayne County Circuit Court<br>Case No: 25-011087-NO<br>Hon. Edward Ewell, Jr. |
| Defendants. | |

## DEFENDANT TEA DATING ADVICE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

A. <u>**Section 230 Bars Plaintiff's[1]  Claims Against Tea.**</u>

This lawsuit is a transparent attempt to circumvent Section 230 of the Communications Decency Act ("Section 230"), codified as 47 U.S.C. § 230. While Plaintiff now asserts that "[t]hese claims do not arise from the content of any post . . ." (ECF No. 6, PageID.136), she alleged in her FAC that "[t]his case arises from a coordinated and malicious campaign of online defamation hosted on the Tea App" (ECF No. 1, ¶ 5, PageID.50). Plaintiff is bound by this allegation. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) ("under federal law . . . admissions in the pleadings are generally binding on the parties" (quoting *Ferguson v. Neighborhood Hous. Servs.*, 780 F.2d 549, 551 (6th Cir. 1986))).

Plaintiff was also right the first time. This case is about the Post.[2] Tea's only relationship with the posters is as publisher and Plaintiff seeks to hold Tea liable for refusing to turn over information about the users who posted on the Tea App. Indeed, the North Carolina Superior Court recently dismissed similar claims against Tea,

---

[1] Capitalized terms not defined herein shall have the meaning set forth in Tea's Motion to Dismiss. (ECF No. 5.)

[2] Plaintiff's additional allegations concerning her attorney's communications with Tea and its attorneys (ECF No. 6, PageID.135-36, 158-67) are incomplete and misleading, including because Plaintiff hid portions of the threads (*e.g. id*. at 164-65 ("Quoted text hidden"). They should also be ignored because she did not plead them. *See, e.g.*, *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 584 n.2 (E.D. Mich. 2014) ("the complaint may not be amended by the briefs in opposition to a motion to dismiss"). While these allegations are also irrelevant, Tea is prepared to provide a copy of the full email chain to the Court.

1

including a negligence claim, with prejudice pursuant to Section 230. **Exhibit A**.[3]

Plaintiff also ignores the substance of Tea's argument that Section 230 bars claims that, though "artfully pleaded" to avoid direct references to a defendant's role in publishing content, "implicitly require recourse to that content to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party [c]ommunications." (ECF No. 5, PageID.99 (collecting cases)). Instead, she argues that the cases Tea cited do not involve the same facts presented here. (ECF No. 6, PageID.138.) That is incorrect,[4] but more importantly, it is irrelevant because the courts' analysis applies equally here and Plaintiff cites no contrary authority.

Plaintiff's reliance on *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (ECF No. 6, PageID.139-40) is also misplaced because it supports Tea's position. The *Barnes* court did not find that all claims "arising from Yahoo's independent promise to act" (*id.* at 139) were excluded from Section 230. Rather, it found that Barnes's negligence claim, which is based on the ***same theory*** Plaintiff advances, was barred by Section 230:

> Under this theory, Barnes' cause of action would evade the reach of section 230(c) entirely because it treats Yahoo not as a publisher, but

---

[3] "It is well established that a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Dearborn Golden Invs., LLC v. Uppercut Bros, LLC*, 2021 WL 5040287, at *4 (E.D. Mich. Oct. 29, 2021) (internal quotes omitted).

[4] For example, the plaintiff in *Jane Doe No. 1 v. Backpage.com, LLC*, "placed particular emphasis" on the defendant's "provision of e-mail anonymization, forwarding, auto-reply, and storage services" 817 F.3d 12, 21 (1st Cir. 2016).

2

> rather as one who undertook to perform a service and did it negligently. We are not persuaded. As we implied above, a plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory from defamation to negligence. Nor can he or she escape section 230(c) by labeling as a "negligent undertaking" an action that is quintessentially that of a publisher.

*Barnes*, 570 F.3d at 1102-03. Like Barnes, Plaintiff cannot escape Section 230 by labeling her claim as "negligence."

Plaintiff's argument that "claims based on a provider's own post-notice misconduct are not immunized" is also wrong. Section 230 applies to post-notice conduct. *See Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014) (Section 230 bars traditional "notice-liability" claims); *see also Zeran v. America Online Inc.*, 129 F.3d 327, 333 (4th Cir. 1997) ("Liability upon notice would defeat the dual purposes advanced by § 230 of the CDA."). None of Plaintiff's cases suggest that Section 230 only applies to pre-notice conduct or even concern post-notice conduct. *Fair Hous. Council of San Fernando Valley v. Roommates.com LLC* found that Section 230 barred claims based on content written in a blank comments section, 521 F.3d 1157, 1174-75 (9th Cir. 2008), and found that Roommates materially contributed to certain unlawful content (an issue not raised here) by pre-populating unlawful content and requiring users to provide answers as a condition to service, *id*. at 1166. *Henderson v. Source for Pub. Data, L.P.*, concerns violations of the Fair Credit Reporting Act (e.g. failure to provide consumers their consumer reports), not publishing third-party content and merely stands for the

proposition that Section 230 "is not a license to do whatever one wants online." 53 F.4th 110, 117 (4th Cir. 2022). Finally, *Fed. Trade Comm'n v. LeadClick Media, LLC* involved a defendant purchasing media for affiliates (not third-parties) so they could publish deceptive statements. 838 F.3d 158, 176 (2d Cir. 2016).

### B. Plaintiff Fails to State a Claim.

#### 1. Plaintiff Fails to State a Conspiracy Claim.

In addition to "prov[ing] a separate, actionable tort," Plaintiff must "allege material facts showing the existence and scope of the conspiracy." *Lathfield Invs., LLC v. City of Lathrup Vill.*, 136 F.4th 282, 307 (6th Cir. 2025). She has done neither. While Plaintiff claims she "identifie[d] the communications" (ECF No. 6, PageID.140-41), she has not identified a **single communication** between Tea and John Doe or made any well-pleaded allegations showing an agreement (*see generally* ECF No. 1). Arguing that the "net effect was to shield the anonymous poster" (ECF No. 6, PageID.140) is not sufficient to plead an agreement. *See, e.g., Knight Indus. & Assocs., Inc. v. Euro Herramientas, S.A.U.*, 2013 WL 3773373, at *5 (E.D. Mich. July 17, 2013) (civil conspiracy claim "requires proof of an agreement to achieve the objective of the conspiracy"). Moreover, contrary to Plaintiff's assertion (ECF No. 6, PageID.141), Tea's cases stand for the proposition that the requirements for pleading conspiracy are "relatively strict" and "some degree of specificity" is required (ECF No. 5, PageID.102 (collecting cases)) not just

4

that conspiracy claims cannot be conclusory. Regardless, Plaintiff's allegations ***are*** conclusory. The only plausible inference from Plaintiff's allegation that Tea "reversed course after retaining counsel" (ECF No. 6, PageID.138) and Plaintiff deciding not to defend her subpoena (*id.* at PageID.142) is that Tea objected to the subpoena ***because it was invalid***.

Plaintiff has also not alleged an actionable underlying tort. In *Early Detection Ctr., P.C., v. New York Life Ins. Co.*, the only case Plaintiff cites, the court held that, "since plaintiffs have failed to state any actionable tort theories in their proposed amended complaint, the conspiracy theory must [] fail." 403 N.W.2d 830, 836 (1986). Unwilling and unable to rely on the alleged defamation, Plaintiff effectively concedes that Tea's alleged negligence is also the basis for her conspiracy claim. (ECF No. 6, PageID.141.) But it is "impossible to conspire to commit negligence." *Datres v. Winfree*, 2024 WL 1756160, at *17 (W.D. Mich. Apr. 24, 2024).

### 2. Plaintiff Fails to State a Negligence Claim.

The court should reject Plaintiff's argument that Tea's communications, which she admits occurred before Tea retained counsel (ECF No. 6, PageID.138), created a duty to produce documents even though Plaintiff's subpoena was invalid (*id.* at 142). Plaintiff cites no relevant authority supporting her position. If Plaintiff believed she was entitled to receive documents despite serving an invalid subpoena, the proper remedy would have been to move to compel in California months ago. *See*

5

Cal. Civ. Proc. Code § 2025.480 (stating requirements for filing motion to compel). This is not a "distraction." Rather, Plaintiff decision to sue in Michigan instead of pursing the proper procedural course demonstrates that her legal position is untenable and the lengths to which she is willing to go to create leverage over Tea.

One of the cases Plaintiff relies on confirms that her negligence claim must be dismissed. In *Henry v. Dow Chem. Co.*, the Michigan Supreme Court held that "a plaintiff must demonstrate a present physical injury to person or property *in addition to* economic losses that result from that injury in order to recover under a negligence theory." 701 N.W.2d 684, 690 (Mich. 2005) (emph. in original). Plaintiff failed to allege either.

*First*, Plaintiff's negligence claim should be dismissed because she does not (and cannot) allege that she suffered a physical injury. *Means v. United States Conf. of Cath. Bishops*, 836 F.3d 643, 653 (6th Cir. 2016) ("In Michigan, 'present physical injury' is necessary to state a claim for negligence.") (citations omitted); *see also Morley v. Michigan Sugar Co.*, 2021 WL 5405867, at *6 (Mich. Ct. App. Nov. 18, 2021) ("a present financial injury—such as loss of property value—without an accompanying physical injury cannot sustain a negligence claim") (citations omitted). This is itself fatal to Plaintiff's claim.

*Second*, she failed to allege a present economic injury. Plaintiff asserts that Tea's actions "prevented her from identifying and serving the anonymous tortfeasor,

6

resulting in continued reputational and emotional harm." (ECF No. 6, PageID.143.) This is not sufficient because Plaintiff does not allege that Tea caused her any accompanying present economic harm. The allegations are also far too general. *See, e.g.*, *Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021) ("a general allegation of emotional harm like anxiety or distress falls short of cognizable injury as a matter of general tort law") (internal citation omitted). Plaintiff's reputational harm allegation is also not plausible because she does not allege that the Post remained online after she contacted Tea.

Finally, Plaintiff's negligence claim is barred because, while she "agrees that Michigan does not have a separate tort of spoliation" (ECF No. 6, PageID.141) she asserts that Tea breached its purported duty by "allow[ing] the identifying information to become unavailable" (*id.* at 142) and that Tea's actions "raise[] an inference of concealment or destruction" (*id.* at PageID.143). Plaintiff cannot base a "negligence" claim on alleged spoliation.[5]

Dated: November 26, 2025

/s/ Katherine L. Pullen
Katherine L. Pullen (P74511)
WARNER NORCROSS + JUDD LLP
2715 Woodward Avenue, Suite 300
Detroit, Michigan 48201
(313) 546-6000
kpullen@wnj.com

---

[5] Plaintiff's request for declaratory and injunctive relief, attorneys' fees, costs, and punitive damages are not addressed because Plaintiff concedes they are not claims. (ECF No. 6, PageID.144-45.)

## **PROOF OF SERVICE**

Katherine L. Pullen states that on November 26, 2025, she caused to be filed the foregoing document and this Certificate of Service via the court's electronic filing system, which will send notification of such filing to all parties on record.

I declare that the above statement is true to the best of my knowledge, information and belief.

*/s/ Katherine L. Pullen*
Katherine L. Pullen

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| SOHA ELSAYED,<br><br>      Plaintiff,<br><br>v.<br><br>JOHN DOE, an individual whose true identity is unknown; and TEA DATING ADVICE, INC., a corporation,<br><br>      Defendants. | Case No. 2:25-cv-13321-RJW-KGA<br><br>Hon. Robert J. White<br>Magistrate Judge Kimberly G. Altman<br><br>Removed from Wayne County Circuit Court<br>Case No: 25-011087-NO<br>Hon. Edward Ewell, Jr. |

**BRIEF FORMAT CERTIFICATION FORM**

     I, Katherine L. Pullen, certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1, and Judge White's Case Management Requirements, including the following (click each box to indicate compliance):

    ☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

    ☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

    ☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

    ☒ the brief and all exhibits are filed in searchable PDF format, *see* Case Management Requirements § III.A;

    ☒ except for footnotes and necessary block quotes, the brief is double spaced (<u>not</u> "Exactly 28 pt" spaced) with one-inch margins, *see* LR 5.1(a)(2);

    ☒ deposition transcripts have been produced in their entirety (<u>not</u> in minuscript), *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, I will mail to chambers a courtesy copy with ECF headers, *see* Case Management Requirements § III.B.

I also acknowledge that my brief will be stricken from the docket if the Court later finds that these requirements are not met.

/s/ *Katherine L. Pullen*
Katherine L. Pullen
Attorney for Defendant Tea Dating Advice Inc.